## THE STATE v. WILLIAM HAYES, Appellant.

Division Two, December 3, 1923.

1. **INSTRUCTION: Refusal: Acquittal if Not Guilty: Converse of State's.** The charge was that defendant (and others) had employed James Seward to murder Andrew Deck, and the court gave an instruction for the State telling the jury that if Seward killed Deck and defendant aided, counseled and abetted him in such killing they should find the defendant guilty, but nowhere told them that if they did not so find they should acquit him. *Held,* that the refusal of an instruction asked by defendant telling the jury that "unless you find from the evidence beyond a reasonable doubt that James Seward killed Andrew Deck your verdict should be for the defendant," was reversible error. The refused instruction correctly stated the law, and no converse of the State's instruction having been given, the defendant was entitled to have it given.

2. ———: ———: . **Reasonable Doubt: Alibi: Conspiracy.** Defendant, tried as an accessory to the crime of murder actually committed by another, is entitled to an instruction embodying the proposition that he is not required to establish beyond a reasonable doubt his defense that he was not present at any time or place when the alleged conspiracy to kill deceased was formed or when deceased was killed, and that all that is necessary for his acquittal is that the jury have a reasonable doubt of his presence at such time or place; and unless the instructions given for the State include such proposition, an instruction asked by him which does include it should be given.

3. **EVIDENCE: Statement of Deceased: Res Gestae: As Affecting Accessory.** In the trial of a defendant charged with having entered into a conspiracy with others to employ one Seward to kill deceased, a witness should not be permitted to testify to statements made by deceased after he was shot, the killing by Seward and the

participation of defendant therein being the important issues in the case. No matter how much defendant and others conspired with Seward to have Seward assault and kill deceased, defendant could not be convicted of the murder unless Seward killed deceased, and the statements of deceased made after he was shot, out of the presence of all of them, were no part of the *res gestae*, and not being shown to have been a dying declaration, were incompetent.

4. **SUBSTANTIAL EVIDENCE OF GUILT:** Province of Appellate Court. The death of the deceased by felony being an admitted fact, and the evidence of defendant's guilty participation in the conspiracy to procure another to kill him being substantial, the credibility of the witnesses is for the jury to determine, and the weight of the evidence is primarily for them, subject to the supervision of the trial court.

Appeal from Iron Circuit Court.—*Hon. E. M. Dearing,* Judge.

REVERSED AND REMANDED.

*Charles J. White* for appellant.

(1) It was error for the trial court to permit Charles Kidell to testify that, about five minutes after Deck arrived at the home of Alois Wagner, Deck said the Hayes gang got him. It likewise was error for the trial court to permit Alois Wagner to testify that, about four or five minutes after the shot was fired, and after Andrew Deck had knocked at his door and entered, Deck stated "a stranger shot me." The above evidence to which witnesses were permitted to testify were but a narrative of a past event, not a part of the *res gestae,* and therefore incompetent. This was prejudicial to the defendant, for the reason that it was illegal evidence upon which the jury could infer that Seward killed Deck, which was the first proposition the State had to prove, and for that reason was grievous error against defendant, because if the State could not prove that James Seward killed Deck (which it did not prove in this case) the defendant was entitled to an acquittal. State v. Kennedy, 177 Mo. 98; State v.

301 Mo.—20.

Reeves, 195 S. W. 1027; State v. Kelleher, 201 Mo. 614; State v. Birks, 199 Mo. 263; State v. Hendricks, 172 Mo. 654. (2) It was error for the trial court to refuse to give the jury, at the request of defendant, his instruction that "if you shall fail to find from the evidence that the defendant, prior to the commission of the alleged offense, entered into a conspiracy with James Seward, and that the defendant did not aid, hire or abet said James Seward in the killing of the said Andrew Deck; and if you shall further believe and find from the evidence that the defendant was elsewhere; and, if you shall have a reasonable doubt of the defendant's presence at the time and during the commission of the crime, then you will find the defendant not guilty." This instruction was the converse of the State's instruction, and the rule "that the defendant in a criminal case is entitled, upon request, to an instruction setting forth the converse of the State's instruction on the principal fact." State v. Cantrell, 234 S. W. 800; State v. Levitt, 278 Mo. 372; State v. Bobbitt, 228 Mo. 252; State v. Mintz, 245 Mo. 540. (3) It was error for the trial court to permit Elvie Thomas, to testify to the conversation that took place on the road to St. Louis between himself, James Seward and Eugene Hayes in the home of Ernest Hayes, after their return from St. Louis. In the first place that conversation on the road to St. Louis was incompetent and not binding on the defendant, and the court so ruled; likewise the same conversation after their return was incompetent and not binding on the defendant, William Hayes, for the reasons, to-wit: First, there is no evidence that William Hayes ever spoke a word during that purported conversation; second, they were not a part of the *res gestae,* were made after the shooting of Deck, and, hence, took place after the alleged conspiracy had terminated. This was error for the reason that in the minds of the jury, it proved defendant to be in the conspiracy; also, in the minds of the jury it proved that Seward killed Deck, which was the State's first objective. State v. Roberts, 201 Mo. 729; Brown v. United States, 150 U. S. 98; Ruling Case Law, secs. 61, 520. (4) The

trial court erred in submitting this case to the jury for the reason the State nowhere in the evidence proved that Seward killed Andrew Deck.

*Jesse W. Barrett,* Attorney-General, and *George W. Crowder,* Assistant Attorney-General, for respondent.

Instruction numbered 4, asked by appellant and refused by the court, is identical with the instruction set out in the cases of State v. Ernest Hayes and State v. Eugene Hayes, the refusal of which this court held to be reversible error. State v. Ernest Hayes, 249 S. W. 49; State v. Eugene Hayes, 247 S. W. 165. For the error committed in the refusal of the above-mentioned instruction, this case will have to be reversed and remanded, on the authority of the cases above cited.

DAVID E. BLAIR, P. J.—Defendant has appealed from a conviction of murder in the first degree and sentence to life imprisonment, for killing Andrew Deck in Jefferson County, on February 26, 1921. Defendant was jointly indicted with James Seward and others for such homicide. A severance was granted to defendant, and a change of venue was taken to Iron County, where he was tried in November, 1921.

A full statement of facts in the case is rendered unnecessary because we have already stated the facts fully in other cases growing out of the same homicide. [State v. Seward, 247 S. W. 150; State v. Eugene Hayes, 247 S. W. 165; State v. Ernest Hayes, 249 S. W. 49.] Reference to those cases is made for a full understanding of the facts.

For the purposes of this case, it is sufficient to say that the evidence on the part of the State tended to show that one Andrew Deck, living at Herculaneum, and a former saloon-keeper, had incurred the wrath of Ernest Hayes, Eugene Hayes, William Hayes, Jesse Thomas, Otto Thomas and Elvie Thomas, because of their belief that he had become engaged as a prohibition-enforcement

officer and had given information to the authorities in respect to their supposed violations of the prohibition law.

Elvie Thomas, a co-indictee and not related to either Jesse or Otto Thomas, was dismissed from the indictment, and was separately charged as an accessory after the fact. Thereafter he testified against his former co-indictee. His testimony tended to show that an agreement and conspiracy existed between Ernest Hayes and his sons Eugene and the defendant and the Thomases to procure the services of a thug from St. Louis to go to Herculaneum to "beat up" Andrew Deck; that in pursuance of such agreement Eugene Hayes procured James Seward and brought him to Herculaneum late in the afternoon of the day of the killing; that thereafter Seward went to Deck's home and represented himself as a prohibition enforcement officer, induced Deck to produce his revolver and, when he laid it down, seized it and forced Deck to accompany him out upon the street where Seward afterward assaulted and shot Deck, resulting in his death soon thereafter; that Elvie Thomas drove Seward and Eugene Hayes to St. Louis where they left Seward and returned to Herculaneum the same night.

I. In the cases of Ernest Hayes and Eugene Hayes judgments have heretofore been reversed and said cases Instruction. remanded for error of the trial court in refusing to give an instruction similar to instruction numbered four asked by defendant in this case. However, in this case the court gave instructions numbered nine and ten, which fully covered the matter embodied in defendant's refused instruction number four, and there was no error in the refusal of such instruction for that reason, which did not exist in those cases.

II. Defendant asked the following instruction:

"The court instructs the jury that unless you find from the evidence beyond a reasonable Converse of doubt, that James Seward killed Andrew Deck, your verdict should be for the defendant."

It requires no argument to demonstrate that this instruction correctly stated the law and that defendant was entitled to have it given in such converse form, unless covered by the instructions given by the court. [State v. Ernest Hayes and State v. Eugene Hayes, supra, and cases cited in those two cases.]

In Instruction One the court told the jury that if Seward killed Deck and defendant aided, counseled, abetted, etc., him in such killing, the jury should find defendant guilty. The jury was nowhere told that if it did not so find it should acquit the defendant. The refusal to give the instruction quoted was therefore reversible error under authority of the cases above cited.

III. We think the trial court should either have given defendant's refused instruction numbered five or so modified instruction numbered ten as to have included therein the proposition that defendant is not required to establish beyond a reasonable doubt his **Defense: Beyond Reasonable Doubt.** defense that he was not present at any time or place when the alleged conspiracy was formed or when Deck was shot and that all that is necessary for acquittal is that the jury should have a reasonable doubt of such presence of defendant. In other respects, Instruction Ten given by the court covers the law as stated in refused Instruction Five.

IV. In the trial of this case, as in the cases of James Seward, Eugene Hayes and Ernest Hayes, the witness **Res Gestae.** Alois Wagner was permitted to testify to statements made by Andrew Deck after he was shot. The admission of such testimony was held improper in those cases. In the Seward Case, however, the error was held to have been cured, "as appellant's counsel not only developed the same facts on the cross-examination of Wagner, but thereafter made inquiries touching the same matter of other witnesses, and developed the same facts."

Speaking of the refusal of the trial court to exclude such testimony in the case of State v. Eugene Hayes, supra, REEVES, C., said:

"This answer was not a part of the *res gestae,* but a narrative of a past event, and therefore imcompetent. [State v. Reeves, 195 S. W. 1. c. 1030; State v. Kelleher, 201 Mo. 1. c. 633, 634, 635, 100 S. W. 470; State v. Hendricks, 172 Mo. 654, 73 S. W. 194; State v. Birks, 199 Mo. 263, 1. c. 273, 274, 97 S. W. 578.] However, it was not prejudicial to the appellant, as the statement did not refer to him. [State v. Dougherty, 287 Mo. 82, 228 S. W. 788.] Moreover, he is not in a position to complain for the reason that it was admitted by his counsel, in open court as follows: " 'It is not necessary to go into detail as to how Mr. Deck was shot. It has already been proven and is of record that Mr. Seward killed Deck.' "

The action of the trial court was held not to be prejudicial to the rights of the defendant in that case for the reasons stated. The soundness of the suggestion that defendant in that case was not prejudiced because the statement did not refer to him, is not apparent when applied to the facts in that case and in the case at bar. The admission of counsel, quoted in the foregoing excerpt, rendered the testimony harmless in that case, but such situation does not exist in this case. The killing of Deck by Seward and the participation of defendant therein were the important issues in this case. No matter how much defendant and others conspired with Seward to have Seward assault or kill Deck, defendant could not be convicted of the murder of Deck under the indictment, unless Seward killed him. The case of State v. Dougherty, 287 Mo. 82, cited by REEVES, C., was one where the defendant was charged with firing the fatal shot and not as an accessory before the fact.

The admission of the testimony of Wagner covering the statements of Deck, which were not part of the *res gestae* and not shown to have been part of the dying declaration, was error.

V. Defendant earnestly insists that there is no substantial evidence in this record either that Seward killed Deck, or that defendant had any part in a conspiracy to

Substantial Evidence.
procure Seward to kill him. We have carefully studied the record and have concluded that the State made a case for the jury. The weight of the testimony was primarily for the jury, subject to supervision of its verdict by the trial judge. We cannot say there was no substantial evidence tending to show both facts.

The death of Deck by felony is an admitted fact in the case. Elvie Thomas testified that he asked defendant what the man's name was who killed Deck, and defendant said: "I am intimately acquainted with him and sometime, the first time we are in St. Louis, I will see him and I will make you acquainted with him;" that defendant told witness that the name of the man was Jim Steward, a name sounding practically the same as *Seward*. Witness further testified that later, while in St. Louis and when he could only see the top of a man's head, defendant said to him, "There goes the fellow there that killed Deck. I will make you acquainted with him sometime."

Elvie Thomas also testified to the conversation between Eugene Hayes and his father Ernest Hayes in the presence of defendant, wherein Eugene detailed a conversation with Seward on the return trip to St. Louis, in which Seward told all the facts in relation to the killing of Deck by himself.

The proof of the participation of defendant in the conspiracy to "beat up" Deck rests in the testimony of Elvie Thomas and two inmates of the county jail. Thomas testified concerning a conversation in the garage of Otto Thomas on February 23rd or 24th, whereat defendant was present, as follows:

"A. Well, the Hayes came in, all three of them was together and they was talking in regard to a negro being there that was supposed to be a dry agent or a revenue officer, and they spoke of him being there and that they had been turned up for selling whiskey.

"Q. Who? A. Ernest Hayes, Eugene Hayes, Will Hayes and Jesse Thomas.

"Q. Who was talking? A. They was all talking when they came in the garage. They was talking about that matter, and Ernest Hayes made the suggestion that they would wait until night and get this negro out on the street and beat his brains out; anyway they said there was a negro there and they was going to get him out in the dark and beat his brains out, and Will Hayes says to Ernest, 'You haven't got your gun with you, have you, papa?' And I didn't understand what Ernest said about it.

"Q. Will said, 'You haven't got your gun with you, papa?' A. Yes, and the answer he gave him, I don't know.

"Q. Then what was said? A. Well, I didn't tarry there any longer and I didn't hear any more of the conversation that evening.

"Q. Was there anything said about Andrew Deck in that conversation? A. Yes, sir; Eugene Hayes says, 'Andy Deck is the one, papa; it isn't this negro we ought to get; I can go to St. Louis and get a man to come out here and beat him up for a little or nothing,' and Ernest said, 'I believe that would be a good idea.'"

Leroy Scott, a confessed burglar, who was in the same jail with defendant, testified to the following:

"Q. I will ask you to state whether or not you ever had any conversation with Will Hayes, the defendant, as to the killing of Andrew Deck? A. Well, it was in my presence.

"Q. What did you hear him say about Andrew Deck? A. Well, I heard him say that they was to give Seward twenty-five dollars for killing him, and that they gave him twenty dollars.

"Q. Did he say who furnished the money? A. He said there was a check wrote out for ten dollars, but he didn't say who wrote it out."

Joseph Hall, who admitted that he was under sentence for robbing a store and who was also in jail with the defendant, testified to hearing a conversation of defendant as follows:

"Q. What did you hear him say about killing Andrew Deck? A. Well, about that check and money, he was supposed to get twenty-five dollars, some fellow was supposed to get twenty-five dollars, and they only paid him ten dollars in a check and ten dollars in money, and that made twenty dollars.

"Q. Did he say what he paid? A. He said, ten dollars.

"Q. He said he paid ten dollars? A. Yes sir."

It is not for us to say that the testimony given by these witnesses is so unworthy of belief that we can say as a matter of law that there is no substantial evidence that Seward killed Deck and that defendant participated in procuring, aiding and abetting Seward in the commission of such homicide, and such contention must be overruled.

VI. We think it unnecessary to discuss other assignments of error made by defendant. They either have been sufficiently considered in our opinions in the other cases, growing out of the same homicide, or they are of such a character that they will not likely arise upon a re-trial.

For the reasons heretofore stated, the judgment is reversed and the cause remanded for re-trial. All concur.