## THE STATE v. EVERETT M. GURNEE, Appellant.

### Division Two, June 5, 1925.

1. **CRIME AGAINST NATURE: Sufficient Evidence: Corroboration.** Positive testimony of the twelve-year-old boy, an unwilling victim, unshaken upon cross-examination, that defendant committed upon him the detestable and abominable crime against nature, is sufficient to sustain a conviction, although just as positively denied by defendant. Being an unwilling victim and compelled by defendant to submit to the act, he was not an accomplice, and consequently it is not necessary that his positive testimony be corroborated.

State v. Gurnee.

2. ———: Rumors of Other .Crimes: Testing Character Witnesses. In the prosecution of a defendant charged with having committed a crime against nature upon his unwilling twelve-year-old son, it was not error to permit the prosecuting attorney to ask witnesses who had testified to defendant's good character whether they had heard "rumors to the effect that this defendant had compelled his other children to do what he compelled" his said son to do. Proof of independent crimes is not proper; but defendant's character witnesses may be asked about rumors and reports of misconduct which, if true, will tend to show that his reputation for morality was not good even though such testimony has the effect of putting him before the jury in the light of being guilty of crimes other than the one charged in the indictment.

3. INSTRUCTION: Converse of State's: No Request. An instruction embodying all the facts necessary to be found to authorize a conviction and telling the jury they must find and believe defendant to be guilty beyond a reasonable doubt, etc., is a sufficient instruction upon all questions of law necessary for their information in arriving at a verdict, and having been given, it is not the duty of the court to give a converse instruction of its own for defendant, telling them if they do not find and believe such facts they must acquit him, where he offers or asks no such converse instruction, but simply excepts, when the given instructions are read to the jury, "to the failure of the court to instruct the jury upon the converse of the State's instruction."

4. ———: Good Character: Less Likely to Commit Crime, Etc. Where the court has instructed on good character and told the jury that it should consider the evidence relating to defendant's good reputation and give to it such weight as they deem proper, and that good character will not· excuse the commission of the offense, it is not reversible error to omit from such instruction the usual words that "a person of good reputation· is less likely to commit a crime than a person whose reputation is not good," in the absence of a request by defendant for the inclusion of such words.

5. INDICTMENT: In Language of Statute. An indictment which follows the language of the statute is sufficient, even though it does not mention the particular statute denouncing the offense.

Corpus Juris-Cyc. References: Criminal Law, 16 C. J., Sections 950, p. 513, n. 75 New; 1349, p. 672, n. 82; 1395, p. 683, n. 82; 2497, pp. 1055, n. 13, 1056, n. 14; 2499, p. 1057, n. 26; 2506, p. 1066, n. 88 New; 2514, p. 1071, n. 45; 2587, p. 1103, n. 70; 2599, p. 1109, n. 52; 17 C. J., Section 3594, p. 264, n. 88. Indictments and Informations, 31 C. J., Section 260, p. 708, n. 29. Sodomy, 36 Cyc. pp. 504, n. 23; 505, n. 42. Witnesses, 40 Cyc. p. 2497, n. 52.

Appeal from Jackson Circuit Court.—*Hon. J. H. Austin,* Judge.

AFFIRMED.

*Ernest Poindexter* for appellant.

(1) The court erred in refusing to instruct the jury at the close of all the evidence in the case to acquit the defendant. The evidence wholly failed and the corroborating witness is wholly unbelievable and the testimony of Viola May Gurnee fails because she could not see the bed through the keyhole. State v. Guye, 299 Mo. 350; State v. Osborn, 246 S. W. 879; State v. Lasson, 292 Mo. 155; State v. Allen, 290 Mo. 258; State v. Gesell, 124 Mo. 531. (2) The court erred in not giving instructions covering all points of law involved in the case, whether asked for or not, and erred in not giving instructions in converse to its Instruction 2. State v. Branstetter, 65 Mo. 149; State v. Wilkins, 221 Mo. 450; State v. Levitt, 278 Mo. 200; State v. Rutherford, 152 Mo. 125; State v. Jackson, 126 Mo. 58. The converse should have been set out in Instruction 2 similar to the way used and approved in State v. Dougherty, 287 Mo. at page 125. Instruction 2 given by the court is not fair to the defendant, and to the average mind it cannot be anything but a direction to convict the defendant, if they find the facts so stated in the instruction, and does not permit the jury to acquit unless they so find the facts as stated in the instruction. (3) The court erred in permitting the prosecuting attorney to ask witnesses for the defendant, and requiring them to answer, the following: "Have you heard, or had you heard, rumors to the effect that this defendant had compelled his other children to do what he compelled Albert Gurnee to do?" This was a vicious question and required defendant to combat rumors, and brought into the case other and independent crimes not designated in the indictment. The prejudice engendered in the jury cannot be accurately measured by such questions, and violates all the rules of evidence, the Consti-

tution of the State and the rulings of all courts. State
v. Wellman, 253 Mo. 315; State v. Craft, 246 S. W. 930;
State v. Lyons, 215 S. W. 484; Sec. 22, Art. 2, Mo. Con-
stitution; State v. Tilter, 239 Mo. 475.

*Robert W. Otto,* Attorney-General, and *Harry L.
Thomas,* Special Assistant Attorney-General, for re-
spondent.

(1)   The information follows the statute and fully
informs the accused of the charge. R. S. 1919, sec. 3512.
(2)   The evidence was sufficient, there being the direct
testimony of the injured party. In addition, his testi-
mony was strongly corroborated by that of his sister. A
judgment will be reversed for insufficient evidence only
if the evidence appears incredible and too unsubstantial
to make it the basis of a judgment. State v. Guye, 299
Mo. 350, 370; State v. Cason, 252 S. W. 688. (3) It was
not error to permit cross-examination of appellant's char-
acter witnesses as to whether they had heard rumors
that the appellant was the author of other offenses. Such
cross-examination tended to weaken testimony of the good
reputation of appellant for morality and was proper.
State v. Cooper, 271 S. W. 471; State v. Harris, 209 Mo.
443; State v. Parker, 172 Mo. 207; State v. Phillips, 233
Mo. 305; State v. Seay, 282 Mo. 676. (4) While it is
the rule that the converse of the principal instruction un-
less the instruction as given contains a converse must be
given upon proper request and the submission of a prop-
er instruction, the rule does not appear to have been ex-
tended to require a converse instruction merely upon an
exception to the failure of the court to instruct on the
converse of such principal instruction. In the present
case no request was made and no instruction was offered.
The exception only appears in the record.

BLAIR, J.—Defendant was convicted in the
Circuit Court of Jackson County of the detestable
and abominable crime against nature. The jury assessed
his punishment at imprisonment in the State Peniten-

tiary for a term of two years. From the judgment entered upon such verdict, he has appealed.

The defendant was a widower living in Kansas City with his two daughters and son and a housekeeper and her two little girls. Helen was the oldest child of defendant and was fourteen years of age. The ages of Viola May and Albert were given as twelve years. However, defendant gave Viola May's age as eleven years, and she was probably younger than Albert.

Defendant was a carpenter and shingling contractor. His wife died in October, 1918. For a time after her death, the maternal grandmother, Mrs. Rude, kept the children. They were also kept for a while at the home of defendant's brother. They were frequently at Mrs. Rude's for short visits.

Defendant testified, and there is other evidence of the same sort, that his wife's mother objected to his marriage and had ever afterward borne ill will toward him. The children were more fond of their grandmother and her husband, their step grandfather, than they were of the defendant. It also appears that the two younger children disliked defendant's housekeeper and would not obey her, and their reported disobedience resulted in punishment at defendant's hands. A neighbor, Mrs. Bibbs, washed and sewed for defendant and his children and they were fond of her. It seems that defendant objected to Albert and Viola May going to Mrs. Bibbs' house and going with her to moving picture shows. There was some proof offered to the effect that Mrs. Bibbs's reputation for morality was bad. Because of ill-feeling between defendant and his mother-in-law, she communicated with Mrs. Bibbs as to the welfare of defendant's children, instead of calling defendant on the telephone and talking to him. Defendant apparently resented this.

The foregoing facts have been recited to show the feelings of the parties and the setting of the alleged crime. Most of the testimony, covering about 125 typewritten pages, was devoted to the state of feelings existing between the defendant and his housekeeper on the

one hand and Grandmother Rude and her husband on the other, and the preferences of the children.

Defendant had purchased a lot and erected a house at 5412 East Twenty-seventh Street in Kansas City two or three years prior to the alleged commission of the crime. During the winter of 1923-1924, his housekeeper was Mrs. Rose Crawford, a widow with two small children. Mrs. Crawford and her children occupied a bed-room at the northwest corner of the first floor of the house, and defendant slept in the southwest bed-room on the same floor. Defendant's two daughters and his son Albert slept upstairs on the sleeping porch. Because of the scarcity of bed covering, defendant had Albert come down stairs and sleep with him about January 1st, in order that the two girls might have his bed covering. It was during the time between January 1st and the middle of March, 1924, that it is claimed the various acts were committed. Albert testified that the act was committed about fifteen times. The act charged in the indictment was alleged to have been committed on or about February 15, 1924.

Albert testified positively, and was not shaken upon cross-examination, that his father, the defendant, compelled him to submit to the act, the indecent details of which need not be recited. This was denied by defendant just as positively. In attempted corroboration of Albert, the youngest child, Viola May, testified that she looked through the keyhole in the door of her father's bed-room and saw the act committed. Much testimony was offered tending to show the impossibility of the bed being seen by one looking through the keyhole, because of the position of the bed in the bed-room. While the implication is strong that the act was committed while defendant and his son were upon the bed, we have carefully read the testimony, in view of the State's contention that there is no direct testimony that the act was committed on the bed, and fail to find any clear or direct testimony to that effect. The defendant offered several witnesses who testified that he bore a good reputation

for truth and veracity and general morality. No countervailing evidence upon that subject was offered by the State.

I. The first contention made by defendant is that the evidence was insufficient to support the verdict of guilt. It is apparent from the foregoing statement of facts that the testimony of Albert Gurnee was entirely sufficient to make a case for the jury. Counsel seems to think that no case for the jury was made because, as he contends and as the testimony tends to show, it would have been a physical impossibility for Viola May Gurnee, by looking through the keyhole, to have seen the act committed upon the bed. If her testimony had been all the testimony as to the commission of the act, there might be some basis for this contention. However, we do not understand that it was necessary for the testimony of Albert Gurnee, the unwilling victim, to be corroborated. The testimony shows that he did not willingly yield to defendant and he was therefore not an accomplice and corroboration of his testimony was not required. [State v. Wilkins, 221 Mo. 444, l. c. 450 and cases cited.]

Where the person, upon whom the crime against nature is perpetrated, consents to and willingly participates in the act, such person is an accomplice. This situation has doubtless given rise to the rule announced in the cases holding that there must be corroboration. [Medis and Hill v. State, 27 Tex. App. 194, 11 Am. St. Rep. 192; People v. Deschessere, 69 N. Y. App. Div. 217; Commonwealth v. Snow, 111 Mass. 411; See also note to Kelly v. People (192 Ill. 119) found in 85 Am. St. Rep. at page 326 and Kelley's Crim. Law & Prac. (3 Ed.) sec. 936.] But where the victim does not consent, he is not an accomplice to the commission of the crime and a conviction may be supported upon his uncorroborated testimony.

The assignment is overruled.

*Sufficient Evidence.* (margin note)

*Corroboration.* (margin note)

II.  Error is assigned because the trial court permitted the prosecuting attorney to ask witnesses, who testified concerning defendant's good character, whether they had heard "rumors to the effect that this defendant had compelled his other children to do what he compelled Albert Gurnee to do."

**Rumors of Other Offenses.**

We have very recently been over this question in State v. Mart Cooper, 271 S. W. 471. We there cited State v. Parker, 172 Mo. l. c. 207; State v. Harris, 209 Mo. l. c. 443; State v. Phillips, 233 Mo. l. c. 305 and State v. Seay, 282 Mo. l. c. 676, and said:

"We recognize the rule that it is not permissible for the State to make proof of independent crimes of the defendant, which seems to be the controlling feature of the cases relied upon by defendant.  But the rule is well established that defendant's character witnesses may be asked about reports and rumors of misconduct which, if true, would tend to show that defendant's reputation for morality was not good, even if such testimony does have the effect of putting defendant before the jury in the light of being the author of crimes other than the one charged in the information."

Counsel for defendant in his brief said: "A careful reading of the Cooper case drives one to the conclusion that the Cooper case upholds the principle that rumors must be current and afloat, and there is not a single thing in the entire record that even hints at any rumors or that defendant had not led a blameless life. Rumors were afloat in the Cooper case.  In the Gurnee case before the court there were no rumors, and it all was in the mind of the prosecuting attorney, and the jury evidently concluded the prosecuting attorney had information personally and not in evidence."

Neither the Cooper case nor any of the cases therein cited made it a preprequisite that rumors must actually have been afloat.  It would clearly be improper to make any of such proof prior to the asking of such question, or at any other time.  The theory advanced by defend-

ant would make the propriety of asking character witnesses about rumors concerning a defendant on trial, which would tend to show that he did not possess a good reputation, depend upon the character of the answers made by the witnesses. In other words, if the witness answered that he had heard such rumors, then no error would have been committed by the court in permitting the question to be asked and in requiring it to be answered; but, if the question be answered in the negative, the court committed reversible error. Such cannot be and is not the rule. The assignment is overruled.

III. Error is assigned to the failure in the trial court to give an instruction in the nature of a converse instruction to given Instruction No. 2. No express criticism is made of Instruction No. 2 as it was given. It was the main instruction detailing the facts required to be proven by the State to authorize conviction. Under the authorities, defendant would have been entitled to a converse instruction, if he had requested it, and it would have been error to have refused to give it. [State v. Eugene Hayes, 247 S. W. (Mo.) 165, l. c. 168 and cases cited; State v. William Hayes, 256 S. W. (Mo.) 747, l. c. 748.]

Converse Instruction.

In this case the defendant presented no converse instruction, with the request that it be given, but seeks to convict the trial court of error solely because of the fact that, when the instructions given by the court were read to the jury, counsel excepted "to the failure of the court to instruct the jury upon the converse of State's Instruction number 2," and the court did not then prepare and give such instruction.

We are well aware of the rule that it is the duty of the court, whether requested or not, to instruct the jury upon all questions of law arising in the case which are necessary for their information in giving their verdict (Sec. 4025, R. S. 1919), and that it is not necessary for the defendant to except to such failure if the attention of the trial court is called to such omission in the motion

for new trial. [State v. Burrell, 298 Mo. 672, l. c. 678, 252 S. W. 709, l. c. 711.]

Under authority of the Burrell case no exception at the time the instructions are read is required, if the omission of the court to instruct is as to a subject necessary for the information of the jury. Defendant is in exactly the same shape as if he had saved no exception and had merely called the attention of the trial court to the omission in his motion for a new trial.

In all the cases we have found, where we have convicted the trial court of error in failing to give a converse instruction, such converse instruction was presented to the court and the court refused to give it. [State v. Jackson, 126 Mo. 521; State v. Rutherford, 152 Mo. 124; State v. Johnson, 234 S. W. (Mo.) 794; State v. Cantrell, 234 S. W. (Mo.) 800; State v. Majors, 237 S. W. (Mo.) l. c. 488.]

In State v. Levitt, 278 Mo. l. c. 378, Paragraph III of the opinion, as written, found reversible error in the refusal of a requested converse instruction. But that paragraph, for some reason not stated, was not concurred in by a majority of the judges.

The only case which we have found, where no converse instruction was requested and the subject was discussed, is State v. Dougherty, 287 Mo. 82, l. c. 90. There we held that the words "unless the jury find the facts to be as stated they will acquit the defendant," which concluded the main instruction given by the court, constituted a sufficient converse instruction. In passing, it was said: "If the instruction complained of had simply told the jury, as in the Rutherford case, 152 Mo. 124, that if they found certain facts to be true they should convict and nothing more, the duty of the trial court to give an instruction telling them that unless they found these facts they should acquit, becomes apparent."

The contention of error in the Dougherty case was overruled because the court gave a converse instruction. Apparently no converse instruction was requested by defendant in that case. The matter above quoted from

said case was not necessary to a decision and should be regarded as *obiter*.

The only ground upon which we may hold that a converse instruction should be given, whether requested or not, is that such instruction is necessary for the information of the jury in giving its verdict. Where the trial court has given an instruction embodying all the facts necessary to be found to authorize conviction and the jury has been told that it must find and believe defendant to be guilty from the evidence beyond a reasonable doubt (properly defined) before it is authorized to convict a defendant, the jury has been sufficiently instructed upon all questions of law necessary for its information in giving its verdict, unless an instruction upon good character is required by the testimony in the particular case.

The defendant is entitled to a converse instruction if he requests it and it is error to refuse it, unless such converse feature is sufficiently covered by instructions given. Such converse instruction is not an instruction necessary to the information of the jury which must be given whether requested or not.

The assignment is overruled.

IV. We have considered all the points briefed and orally argued in this court by counsel for defendant. The motion for new trial assailed each and every one of the instructions given by the trial court. It is Good Character. not necessary to notice them separately. One specific assignment made was that the court erred in refusing to instruct that a person of good reputation is less likely to commit a crime than a person whose reputation is not good. The point has not been briefed or argued.

The court instructed on good character and told the jury it should consider such evidence and give it such weight as it deemed proper and in the same connection told the jury that previous good character would not excuse the commission of the crime. But the court

omitted the statement that one whose character is good is less likely to commit crime than one whose character is not good. That feature is usually included in character instructions, but we have found, and our attention has been called to, no case where the omission of such feature of the instruction has been regarded as reversible error. That a man who possesses good character is less likely to commit a crime than one whose character is not good is common knowledge. Jurors know it as well as do judges, without being so told, and undoubtedly consider that fact, whether so told or not.

In the absence of a request by defendant for an instruction including the feature now complained of, we do not regard the omission as reversible error.

V. The indictment is assailed by the motion in arrest as not charging the violation of any criminal laws **Indictment.** of the State. It follows the language of Section 3512, Revised Statutes 1919, which denounces the crime against nature, and is sufficient. [Kelley's Crim. Law & Prac. (3 Ed.) sec. 936.]

The verdict is also attacked. It found defendant guilty of the crime against nature, as charged in the indictment, and assessed the punishment. It is entirely sufficient to support the judgment.

VI. The defendant was found guilty by the jury upon conflicting evidence, but it was the exclusive province of the jury to determine that issue. It evidently believed the testimony of defendant's son and disbelieved **Fair Trial.** his testimony. The verdict met the approval of the trial judge, who saw and heard the witnesses.

We are not authorized to disturb the verdict. The lowest punishment fixed by the statute was assessed. There is no intimation in the record of bias or prejudice on the part of the jury. Defendant was evidently given a fair and impartial trial. We have discovered no reversible error.

Hence, it becomes our duty to affirm the judgment, and it is so ordered. All concur.