THE STATE v. ROY LEDBETTER, Appellant.—58 S. W. (2d) 453.

Division Two, March 3, 1933.

*Elmer G. Wadlow* for appellant.

*Stratton Shartel,* Attorney-General, for respondent; *Don Purteet* of counsel.

TIPTON, J.—The grand jury of Greene County returned an indictment in the circuit court of that county, charging the appellant, Roy Ledbetter, and Howard Carter with the crime of robbery in the first degree with a dangerous and deadly weapon. The appellant was convicted of the charge and sentenced to ten years' confinement in the penitentiary. He has duly appealed to this court.

About 12:40 o'clock on June 6, 1931, the Bank of Ash Grove, Missouri, was robbed of $3,758. A lone robber, wearing blue overalls, a blue shirt, and a cap, his face apparently smeared with some red substance, entered the bank. In charge of the bank at the time was H. N. Hudgens who started to one of the cash windows to wait on this person. The robber immediately drew a revolver and commanded Hudgens and Nora Anglum, another employee, to put up their hands and give him the money which was in the cash drawer. Hudgens immediately complied with the order by giving the robber about $1,200. The remaining money was in the bank vault located in the rear of the building. The robber ordered Nora Anglum to lie down on the floor, and compelled Hudgens to get the rest of the money out of the vault. About the time that Hudgens was taking the money out of the vault, two customers, George Edgington and Nina Smith, entered the bank and the robber compelled them to lie down on the floor.

Harry Dooley was used as a witness in behalf of the State. He testified that he, Howard Carter, and the appellant had agreed to rob this bank. According to his testimony the appellant was to rob the bank, and Dooley was to have an automobile in an alley near the bank so that the appellant could escape. The money was to be buried on a farm of Howard Carter's two or three miles from the town of Ash Grove. Dooley stated that, in compliance with the previous plans, he had his automobile in the alley and that immediately after the bank robbery the appellant got into his automobile and they drove some distance on the highway before returning to the appellant's home in the town of Ash Grove. About two o'clock that day Dooley went to his barber shop, got his tools, took his wife, and went to visit her sister in another town. The next day Dooley and his wife returned to Ash Grove, and in the afternoon they drove to La Crosse, Wisconsin. On the following Wednesday he rented an apartment in the city of La Crosse. Most of the money taken from the bank was in ordinary currency sacks, commonly used in banks, and was found in this apartment. In a day or so Dooley was arrested, and he, his wife, and the money were returned to Missouri. Hudgens and Nora Anglum identified the sacks as the ones which contained the money that the robber received when the bank was robbed. Dooley further testified that he did not give any of the money to Howard Carter nor bury any of it on the farm in accordance with their plans.

The defense was an alibi. There was no witness who connected the appellant with the robbery, except Dooley, and he was corroborated only to the extent that he and the appellant were seen together at the places where Dooley testified the robbery was planned.

The appellant's first assignment of error is that the court refused to give Instruction A, which appellant claims is the converse of State's Instruction No. 1. Instruction A told the jury in substance that even though they might believe the appellant had knowledge that the bank would be robbed on the hour and day that it was robbed, yet if it believed from the evidence that one Harry Dooley or some person other than the appellant entered the bank and committed the robbery, then it should acquit the appellant.

■ ■ The State's theory of the case, is that the appellant personally entered the bank as shown by the State's evidence and the instructions given on behalf of the State. In other words, under the evidence in this case, if the appellant did not personally enter the bank and take the money, then he did not participate in the robbery. Instruction A presented the appellant's theory of the case, and he had substantial evidence to the effect that the bank was robbed by Harry Dooley. George Edgington and Nina Smith testified on behalf of the appellant that the lone robber in the bank was Harry Dooley and not this appellant, while the other eyewitnesses to the

robbery, H. N. Hudgens and Nora Anglum, testified in behalf of the State that they were unable to identify either the appellant or Harry Dooley. All eyewitnesses to the robbery described the robber to be six feet tall, wearing blue overalls, a blue shirt, and a cap. The State's witnesses testified that he weighed from 180 to 200 pounds, while appellant's testified that he weighed from 170 to 180 pounds. The appellant was entitled to an instruction embodying his theory of the facts adduced, provided it correctly declared the law. Mere knowledge on the part of the appellant that the bank was to be robbed does not tend to establish in any degree appellant's guilt of the charge against him. [State v. Bresse, 326 Mo. 885, 33 S. W. (2d) 919; State v. Odbur, 317 Mo. 372, 295 S. W. 734.]

We have uniformly held that where a defendant in a criminal case formulates and asks an instruction that correctly declares the law which is the converse of the State's principal instructions, it is the duty of the trial court to give the same. And it is reversible error to refuse such converse instruction, unless the State's instructions clearly submit the converse of the facts and issues upon which convictions are authorized. We reversed the following cases: State v. Jackson, 126 Mo. 521, 29 S. W. 601; State v. Rutherford, 152 Mo. 124, 53 S. W. 417; State v. Johnson (Mo.), 234 S. W. 794; State v. Cantrell, 290 Mo. 232, 234 S. W. 800; State v. Majors (Mo.), 237 S. W. 486; State v. Hayes, 247 S. W. 165; State v. Hayes, 301 Mo. 304, 256 S. W. 747; State v. Stewart (Mo.), 29 S. W. (2d) 120. An examination of the decisions supra discloses that in each there was a reversal because the trial court refused to give a converse instruction timely offered correctly declared the law.

In the cases of State v. Dougherty, 287 Mo. 82, 228 S. W. 786; State v. Gurnee, 309 Mo. 6, 274 S. W. 58; State v. Nasello (Mo.), 325 Mo. 442, 30 S. W. (2d) 132, no converse instructions were formulated and asked, and for that reason the trial courts were not convicted of error in failing to give a converse instruction. In the case of State v. Messino, 325 Mo. 743, 30 S. W. (2d) 750, the converse instruction was held properly refused because a sufficient converse instruction had already been given and also because it did not correctly declare the law. In State v. Worten (Mo.), 263 S. W. 124, we held the refusal to give the converse of a collateral instruction given at the request of the State was not error. Instruction A correctly stated the converse of facts and issues embodied in the State's principal instruction and its refusal was error.

It is not necessary to discuss other alleged errors, because upon retrial they probably will not recur.

For the error indicated, the judgment of the circuit court is reversed, and the cause remanded for a new trial. All concur.