**STATE of Missouri, Respondent,**

v.

**Roy Edward RODRIGUEZ, Appellant.**

**No. 57046.**

Supreme Court of Missouri, Division No. 1.

Sept. 11, 1972.

John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackmar, Sp. Asst. Atty. Gen., St. Louis, for respondent.

J. Arnot Hill, Hill & McMullin, Kansas City, for appellant.

HIGGINS, Commissioner.

Roy Edward Rodriguez was convicted by a jury of felonious striking of police officer Larry Mallot while engaged in performance of his duties. The jury was unable to agree on defendant's punishment; the court fixed his punishment at three years' imprisonment and rendered sentence and judgment accordingly. § 557.215, V.A.M.S.; Rule 27.03, V.A.M.R.

Appellant does not question the sufficiency of evidence to sustain his conviction, and a statement may be quoted from his brief which demonstrates the sufficiency of the state's case and serves also to present his first point.

"Patrolman Larry Mallot of the Kansas City, Missouri Police Department testified that on the 19th of December, 1970 at approximately 5 p. m., he and other officers had been pursuing a suspect who had been firing a gun at them eastbound on 12th Street and that said suspect was fatally wounded on the northwest corner of 12th and Michigan. * * * that immediately following said fatal shooting, he and other officers attempted to 'cord off' the area in order to preserve the evidence and that he picked up the suspect's pistol. * * * that a crowd gathered, that defendant was present and was using foul and abusive language. * * * that defendant was up next to the rope, * * * and that he became 'very large and belligerent, using several profane languages and such.' * * * that on numerous times he told defendant and others to refrain from that type language or they would be placed under arrest for disorderly conduct. He stated that they continued and that when a wagon arrived, he placed defendant and another party under arrest. He stated that as he reached for defendant, defendant pulled away, tearing his shirt sleeve and stated that at that time, defendant hit him with his right fist on the forehead, knocking him to the ground; that when he got back on his feet, other officers were holding defendant but that defendant pulled away and struck the witness on the right cheek, knocking him down again; that when he got up the second time, defendant had been subdued and placed in a wagon and taken

to police headquarters. Police Officer Frank Seckinger * * * testified that he assisted in the arrest of defendant; that on one occasion, he saw defendant knock Patrolman Mallot to the ground. * * * that he, Officer Seckinger, attempted to kick defendant but did not know whether he connected or not. Sgt. Stanley David Horasek * * * testified that soon after the fatal shooting, he saw defendant along with two other people who were 'more or less trying to mess up the area, if anything.' He further stated he heard defendant using loud and abusive language and that he considered this to be disorderly conduct. He stated that he heard defendant ask Officer Mallot 'Are you the motherfucker that killed him?' That he heard Officer Mallot warn the defendant about this type of conduct; that Officer Mallot when he placed 'Bohanon under arrest' * * * he was struck by the defendant. He, referring to Officer Mallot, was standing beside Bohanon. The witness further testified that Officer Mallot was holding another subject by the arm when defendant struck Officer Mallot. Harold G. Bohanon testified for the defendant. * * * that at the time and place in question, he had been talking to Officer Mallot about removing the deceased from the 'sticker bushes' because he might still be alive; that officers then drug him over the barricade and put handcuffs on him and placed him under arrest. He stated that two policemen came up behind the defendant and were holding him; that while they were holding him, Officer Mallot came up to defendant and kicked him in the crotch, at which time the defendant struck Officer Mallot.

"Katherine Arlene Bohanon testified for the defendant. * * * that at the time and place in question while in her apartment, she heard shots fired; that she went down to where the body was lying; that about 200 people were there; that the area was roped off when she got there; that both she and her husband were placed under arrest prior to the time an attempt was made to arrest defendant; that at the time defendant was arrested, she saw a short policeman kick the defendant between his legs; that when this occurred, defendant hit the officer who kicked him.

"Cordelia Marie Williams testified for the defendant. * * * that she was present at the roped-off area when the defendant was arrested; that four police officers had the defendant down; that they beat him and kicked him and that they sprayed something in his face and put him in the 'paddy wagon.' * * *

"Defendant testified that he saw the police officer shoot and kill a man, that he went down to the scene; that he heard Harold Bohanon ask Officer Mallot if he, Officer Mallot, has shot the deceased. That Officer Mallot stated that he did and started laughing about it, and then he, the defendant, called Officer Mallot a lot of dirty names; that Harold Bohanon was arrested before defendant was arrested; that the officer accused him of disturbing the peace and asked him, 'Are you going down?' to which defendant said 'I am not going down.' He then stated that three or four officers grabbed him from behind and that someone hit him in the back of the head; that Officer Mallot then kicked him right between the legs; that at this time, he broke away from the officers, got his right arm loose and 'I dropped him'; that at the time he hit Officer Mallot, two officers were holding one arm and his other arm was handcuffed. He further testified that Officer Mallot got up and kicked him again in the same place and that he, the defendant, got loose and 'dropped him again.' After this occurred, a number of officers were trying to get him in the 'wagon'; that before getting in the 'wagon' someone jerked his arm with the handcuff on it, pulled him off the curb and all of them fell to the ground; that someone shot him in the face with 'Mace'; that he then surrendered but the officers continued to kick him and hit him in the face."

The State's case was submitted by Instruction No. 3, which reads in part:

"The Court instructs the jury that if you believe and find from the evidence in this case, beyond a reasonable doubt, that in the County of Jackson and State of Missouri, on the 19th day of December, 1970, the defendant herein, ROY EDWARD RODRIGUEZ, did then and there unlawfully, wilfully and feloniously make an assault upon one Ptl. Larry M. Mallot, a police officer of the City of Kansas City, Missouri, a municipal corporation, while said officer was actively engaged in the performance of duties imposed on him by law by then and there striking, beating and wounding said police officer if such be your finding, then you will find the defendant guilty of Felonious Assault Upon a Police Officer While Actively Engaged in the Performance of Duties imposed on him by law.

"And, unless you find the facts to be as above stated, you are instructed to acquit the defendant of Felonious Assault Upon Police Officer Mallot While Actively Engaged in the Performance of Duties imposed on him by law."

Defendant proposed to submit his theory of the case by Instruction No. A, which reads:

"The Court instructs the jury that even if they find and believe from the evidence that the defendant struck, beat, wounded or assaulted Patrolman Larry M. Mallot, a police officer of Kansas City, Missouri, that they must further find that said officer was actually engaged in the performance of duties imposed on him by law before they can find him guilty.

"In this connection, the Court further instructs the jury that if they find and believe from the evidence that at the time Patrolman Larry M. Mallot attempted to arrest defendant, that said police officer had no reasonable cause to arrest defendant, then you will find defendant not guilty by reason of the fact, if you so find, that said police officer was not actually engaged in the performance of duties imposed on him by law."

Instruction No. A was refused by the court, and appellant charges error to such refusal, stating his theory of defense to have been that Officer Mallot was not actively engaged in performance of his duties, and argues that if he attempted to make an arrest without probable cause, then he was not so engaged. He would support his contention by State v. Chevlin, Mo., 284 S.W.2d 563; State v. Fraley, 342 Mo. 442, 116 S.W.2d 17; State v. Quinn, 344 Mo. 1072, 130 S.W.2d 511; State v. Ledbetter, 332 Mo. 225, 58 S.W.2d 453, and State v. McWilliams, Mo., 331 S.W.2d 610, on the proposition that where a defendant offers an instruction that correctly declares the law and is the converse of the State's main instruction, it is reversible error to refuse the instruction unless the State's instructions fully and fairly submit such converse.

Conceding that Instruction No. 3 "did require the jury to find that Officer Mallot was actively engaged in the performance of duties imposed upon him by law at the time of said assault," appellant attempts to bolster the weakness of his position by further argument that the necessary finding was presented "in an abstract manner and did not directly present the question to the jury."

The purpose of Section 557.215 is to protect a police officer while performing duties imposed upon him by law. The effect of Instruction No. A would inform the jury that Officer Mallot was not actually engaged in performance of duties imposed upon him by law unless he had probable cause to arrest the defendant. As such Instruction No. A unduly limits the issue to the officer's "reasonable cause to arrest defendant," and the statutory issue presents more for the jury's consideration. In the circumstances of this case, it would be possible for the jury to belive that Officer Mallot did not have reasonable cause to arrest defendant, but such finding would

not preclude a finding on the statutory issue that the officer was engaged in the performance of his lawful duties when struck by defendant. Similar undue limitations have served on other occasions to excuse alleged error in refusal of similarly defective proffered instructions. See e. g., State v. Sallee, Mo., 436 S.W.2d 246; State v. Ruffin, Mo., 286 S.W.2d 743.

■ During the prosecuting attorney's closing argument, the following occurred: "So an acquittal today will justify resisting arrest for any charge, allow striking of an officer, and may set a course of conduct that might open up the floodgates for an activity—for a summer of activity along this line, or any time along this line. If we go back to this dogging-the-poor incident where Mr. Hollimon—

"MR. HILL: If it please the Court, I have an objection I'd like to make out of the hearing of the jury.

"(Whereupon, the followng proceedings were had and entered of record IN THE PRESENCE BUT OUT OF THE HEARING OF THE JURY):

"MR. HILL: He's just argued to the jury that unless they convict we might have riots next summer. MR. BELLEMERE: No, I didn't say that. THE COURT: The record will show what he said.

"MR. HILL: We object to it as being improper argument; that it is inflammatory; and we ask that the jury be instructed to disregard it and further ask for a mistrial. THE COURT: The objection is overruled, and the motion is overruled."

Appellant charges error to the court's ruling, contending that the State's argument "was highly prejudicial and could easily lead the jury to believe that unless they found defendant guilty, it might lead to a summer of similar activities, a summer of riots and civil disturbances," and that the lack of affirmative action made it appear that the argument had the court's approval. Appellant would support his position with State v. Tiedt, 357 Mo. 115, 206 S.W.2d 524, and State v. Groves, Mo., 295 S.W.2d 169, where arguments that acquittal would endanger jurors and their families were held improper because they were designed to arouse the personal hostility of the jurors; and State v. Mobley, Mo., 369 S.W.2d 576, where it was held improper to argue that conviction was necessary, not for the general deterrent to others but to prevent defendant from committing other crimes.

The argument in this case is quite different from those in appellant's citations in that it constitutes a plea for law enforcement and for conviction as a deterrent to similar activities by individuals or groups of individuals. As such, the inferences so drawn are permissible and reasonable concerning the effect which may result from the jury's failure to convict in the circumstances of this case, State v. Laster, 365 Mo. 1076, 293 S.W.2d 300, State v. Elbert, Mo., 438 S.W.2d 164; and the ruling was well within the sound discretion accorded a trial court in control of final argument. State v. Sallee, supra; State v. Morton, Mo., 444 S.W.2d 420; State v. Smith, Mo., 431 S.W.2d 74.

Judgment affirmed.

WELBORN, C., concurs.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

All of the Judges concur.