THE STATE v. JOHN I. DOUGHERTY, Appellant.

Division Two, March 19, 1921.

1. **EVIDENCE: Dying Declaration: Antecedent Statement: Brought Out by Defendant.** A defendant cannot complain of a statement made by deceased just prior to his dying declaration, if it was brought out by the suggestion of his counsel.

2. ———: ———: ———: **Competency: Res Gestae.** A statement made by deceased immediately preceding his dying declaration, that "it was a shame to shoot a man this way," made at the time of the shooting and necessarily forming a part of the facts and circumstances attending the crime, and so indissolubly connected with the act itself as to form a part of the *res gestae*, is properly admitted in evidence.

3. **INSTRUCTIONS: General Objection.** A general objection to instructions in a criminal case will not save them for review

on appeal. The instructions complained of should be so designated, either literally, numerically or by reference to their subject-matter, as to enable the trial and appellate courts to determine what instructions are referred to.

4. ———: Converse of Those Given. If the instruction given states the facts necessary to be found to establish the crime, and cannot reasonably be construed otherwise than as telling the jury that if they find the facts stated they may convict, but unless they so find they will acquit, it is not error to fail to give a converse instruction based on defendant's testimony. The words at the end of the instruction given for the State "unless the jury find the facts to be as stated they will acquit defendant" of themselves constitute a converse instruction, and it is only when such words are omitted from the one given that it is necessary to supplement it by a converse one.

Appeal from St. Louis City Circuit Court.—*Hon. Benjamin J. Klene,* Judge.

AFFIRMED.

*Thomas B. Harvey* for appellant.

(1) The court erred in admitting as a part of the dying declaration the statements by the deceased denunciatory of the shooting of him, to the effect that "it was a shame to shoot a man that way," etc. Only statements of what occurred were competent. State v. Brown, 188 Mo. 451; State v. Kelleher, 201 Mo. 614; 16 C. J. p. 843, sec. 2314 (3). (2) The instruction given upon the theory of the killing being done in the execution of a conspiracy was faulty in not putting to the jury the converse, based upon the defendant's testimony that he never joined any conspiracy. State v. Frederichs, 136 Mo. 58; State v. Jackson, 126 Mo. 521; State v. Rutherford, 152 Mo. 125; State v. Levitt, 213 S. W. (Mo.) 108. (3) The court erred in its instruction on conspiracy in declaring that the defendant's repentance and withdrawal from the contemplated crime must have been with the knowledge of his confederates to avail him anything. Wharton on Homicide, 665; Richard

v. State, 30 Ga. 757; State v. Allen, 47 Conn. 139. (4) Instruction 5, discrediting things favorable to himself, and lending legal approval to things against himself, in a statement introduced in evidence by the State, is erroneous as a comment on the evidence and pointing solely to the defendant as a witness. State v. Barrington, 198 Mo. 125; Stetzler v. Street Ry. Co., 210 Mo. 704; Lander v. Transit Co., 206 Mo. 461; Clay v. State, 15 Wyo. 64; Welsh v. State, 164 S. W. 119. (5) The instruction 4a, given by the court, was palpably erroneous and prejudicial in pointing out certain facts and commenting on the same. State v. Raferty, 252 Mo. 72; State v. Wertz, 191 Mo. 569; State v. Pate, 188 S. W. 139; State v. Rutherford, 152 Mo. 130; State v. Sinclair, 250 Mo. 278; State v. Malloch, 269 Mo. 235; State v. Rogers, 253 Mo. 399; State v. Sivils, 105 Mo. 533.

*Frank W. McAllister*, Attorney-General, and *H. P. Ragland*, Assistant Attorney-General, for respondent.

(1) The statements made by deceased to Dr. Schlostein, were admissible. (a) They were admissible as dying declarations. State v. Brown, 188 Mo. 460; State v. Elkins, 101 Mo. 344; State v. Kelleher, 201 Mo. 637; State v. Evans, 124 Mo. 397; State v. Dipley, 242 Mo. 477; State v. Colvin, 226 Mo. 481; State v. Vest, 254 Mo. 458. (b) Evidence which is admissible for any purpose cannot be excluded by the court on the ground that it is inadmissible for other purposes. State v. Bersch, 276 Mo. 416; State v. Finley, 193 Mo. 211; Sotebier v. Transit Co., 203 Mo. 721. (c) The statements were admissible as part of the *res gestae*. State v. Martin, 124 Mo. 524, 529; State v. Lockett, 168 Mo. 480; State v. Sexton, 147 Mo. 89; State v. Sloan, 47 Mo. 604; Greenlee v. K. C. Casualty Co., 192 Mo. App. 308. (d) If error, it was invited and defendant cannot complain. Section 5115, R. S. 1909; State v. Hamey, 168 Mo. 197. (2) Appellant's instruction in the nature of a demurrer was properly overruled. There was suf-

ficient evidence to sustain the verdict. State v. Oertel, 217 S. W. 64; State v. Selleck, 199 S. W. 130; State v. Conley, 217 S. W. 29; State v. Mann, 217 S. W. 67. (3) Appellant's fifth and sixth assignments that the court erred in giving and refusing instructions to the jury are too general and indefinite for review by this court. State v. Lewis, 273 Mo. 532; State v. Selleck, 199 S. W. 129. (4) Appellant's seventh assignment that the court erred in instructing on conspiracy for the reason that there is no legal and competent evidence on which to base the instruction on conspiracy should be overruled. 12 C. J., sec. 227, p. 634; State v. Hill, 273 Mo. 341; State v. Fields, 234 Mo. 623; State v. Sykes, 191 Mo. 78; State v. Murray, 193 S. W. 832; State v. Bobbitt, 215 Mo. 39; State v. Roberts, 201 Mo. 728; State v. Forsha, 190 Mo. 296; 13 R. C. L. sec. 33, p. 723. (5) Alleged error must be properly referred to in the motion for new trial if it is to be saved for review by this court. Russo v. Brooks, 214 S. W. 431; State v. Brashear, 186 S. W. 1060; Lust v. Pub. Service Com., 210 S. W. 72; St. Louis v. Railroad, 248 Mo. 11.

WALKER, J.—Defendant was indicted by the grand jury of the City of St. Louis, together with three others, for murder in the first degree in having shot and killed Henry Becker. A severance was granted and defendant was tried, convicted and sentenced to life imprisonment in the penitentiary. From this judgment he appeals.

Henry Becker was returning to his home on the corner of Compton and Russell avenues in the City of St. Louis at a little before nine o'clock on the night of April 14, 1919. He had alighted from his automobile opposite his residence, the chauffeur had left, and Becker was about to step upon the walk leading from the street to the house when he was shot and robbed of about $1300 he had on his person. His wife, who was ill and confined to her bed, heard a shuffling, as of feet, on the walk, the report of a gun and an exclamation, "They

have shot me.'' She recognized her husband's voice and asked her mother to go out and bring him in. The mother and the immediate neighbors, who had also heard the shot, found Becker with his feet lying in the gutter and his head in the street in front of his home. Upon their approach he exclaimed, ''I'm shot; I'm shot.'' He was carried into his home and a doctor near at hand was summoned. He found Becker in a precarious condition. He was panting for breath, his pulse was weak, irregular and rapid, indicative of an internal hemorrhage. An examination disclosed a gunshot wound in his abdomen. To those present he said, ''This is a shame, to shoot a man like this. I asked them not to shoot me and gave them everything I had and still they shot me.'' To his mother-in-law, who was standing near, he said, ''Grandma, it's all over with me; I'm a goner.'' This he repeated several times, adding, ''It's a shame to shoot a man like this.'' Soon after he made these statements he was taken to a hospital, operated on, and died six hours after being shot.

The defendant made a statement to the police after his arrest. The voluntary making of this statement and the correctness of its subject-matter as made by the defendant are attested by several persons. The defendant on the witness stand denied much of it. The material portions of same are that he and the other defendants agreed on the day of the commission of the crime to ''hold up'' Becker; and that they went to the neighborhood of his residence to await his return to accomplish their purpose; that he and the others were standing on the opposite side of the street from Becker's residence when they saw his automobile approach; that two of the party crossed over the street to a point where the automobile would stop to enable Becker to alight, while he and one of the others remained on the opposite side of the street; that when two of his companions crossed the street defendant ran and when about a block distant he heard a shot fired; that he mounted a street car going east at Compton and Park avenues and got

off at Eighteenth and Compton, where he found two
of the other defendants; that upon his arrival they
"split up" the money and he got $240 for his share;
that Kahmann, one of the defendants, said, "they got
$1300 from Becker and that he [Kahmann] shot him
because he hollered;" that they then went to a saloon
in the neighborhood and had several drinks, bummed
around a while and then went to defendant's mother's
home, where they had a drinking and dancing party
which continued until six o'clock the next morning; that
as defendant ran away from the scene of the crime he
threw his gun on a lawn about a block west of Becker's
house; that he left some of the money he had gotten
with his mother and $150 of it at Stevens's saloon;
that he and the other defendants talked about holding
up Becker about a week before the occurrence, but that
he had said he did not want anything to do with it.
The jury believed this statement and not defendant's
subsequent denial of same. The truth of his statements
in regard to the money left with his mother and the
saloon-keeper was attested by them and the money was
turned over to the police. The pistol was found where
he said he had thrown it. The record discloses other
incriminatory facts and circumstances which need not
be repeated, enough having been shown to demonstrate
defendant's presence and participation in the crime.
No question is raised as to the quantum or probative
force of the testimony. The defense is purely technical.

I. Error is assigned in the admission in evidence
of a statement of the deceased immediately preceding
his dying declaration that he had said to his assailants
"it was a shame to shoot a man in that
way." In determining whether an objec-
tion to a statement of this character is
tenable and hence worthy of consideration, the circum-
stances under which it was offered in evidence and the
manner in which it was made are to be taken into consider-
ation. As to the former, we find, without encumbering
this opinion with a rescript of the testimony, that the

*Statements of Deceased.*

statement was brought out at the suggestion of counsel
for the defendant.   The error, therefore, if any, was
committed at the instance of defendant and he should
not be heard to complain.   [Sec. 5115, R. S. 1909, now
Sec. 3908, R. S. 1919; State v. Palmer, 161 Mo. 1. c. 174;
State v. Hamey, 168 Mo. 1. c. 169; State v. Grubb, 201
Mo. 1. c. 609; State v. Colvin, 226 Mo. 446; State v. Hutchi-
son, 186 S. W. 1000.]

However, the circumstances under which the state-
ment was originally made furnish a more substantial
reason for the overruling of defendant's contention in
that it was shown to have been made at the time of the
killing and necessarily formed a part of the facts and
circumstances attending the crime; in other words, it
was so indissolubly connected with the act itself as to
form a part of the *res gestae*.  The general rule in regard
to a declaration of the character here in question is that
if it is shown that it was made under such circumstances
as to raise a reasonable presumption that the utterance
was spontaneous and was created by or sprang out of
the transaction itself and was made contemporaneously
with the act or so soon thereafter as to exclude the pre-
sumption that it was the result of premeditation, then
it should not be classified as a mere narrative of a past
occurrence, but as a part of the *res gestae,* whether for or
against the declarant, and hence not subject to the gen-
eral rule excluding hearsay testimony.  [State v. Lockett,
168 Mo. 480; State v. Brown, 188 Mo. 1. c. 451; State v.
Kelleher, 201 Mo. 614; State v. Reeves, 195 S. W. (Mo.)
1. c. 1030 and cases.]

Finally, the remark is not of such a nature when
admitted in evidence as to prejudice the defendant.   It
did not designate him as one of the assailants and its
only probative effect was to show that the wound inflicted
was in the commission of an assault; the trial court, there-
fore, did not err in the admission of testimony in regard
thereto.

II. The instructions to which the defendant objects, other than that in regard to a conspiracy, have not been so preserved as to entitle them to a review. We have frequently ruled upon the manner of objections herein made and have held that something more specific than a general reference to the errors assigned is necessary. It may be conceded that the rule of law invoked by counsel for defendant is applicable to the review of instructions in civil cases, but it does not follow, in the face of an express statute to the contrary, that it is applicable to criminal cases. Section 5285, Revised Statutes 1909 (now Sec. 4079, R. S. 1919) provides that "the motion for a new trial must set forth the grounds and causes therefor." In construing this section we have uniformly held that the instructions complained of should be so designated, either literally, numerically or by reference to their subject-matter, as to enable the trial and appellate courts to determine what instructions are referred to. [State v. Rowe, 271 Mo. l. c. 94 and cases; State v. Chissell, 245 Mo. l. c. 555; State v. Wilson, 225 Mo. 518; State v. Gilbert, 186 S. W. 1003; State v. Gifford, 186 S. W. l. c. 1060 and cases; State v. Miller, 188 S. W. 87; State v. Fleetwood, 190 S. W. 1; State v. Selleck, 199 S. W. 130; State v. Stevens, 220 S. W. 844; State v. Gallagher, 222 S. W. 467.]

*Objections to Instruction.*

Every possible phase of this question, as applied to objections to instructions in motions for new trials in criminal proceedings, has been definitely determined in the cases above cited without a dissenting voice, and there remains no reason for a further discussion of this matter. The requirements of the statute (Sec. 4079, R. S. 1919) are reasonable; its purpose is wholesome; it denies no right of defense to the accused to which he is entitled under the law, and simply requires him to apprise the trial court of the grounds of his objections to the instructions, and not to obscure them and thus mislead the court by what cannot be otherwise properly designated than a dragnet.

III. It is contended that the instruction given at the instance of the State based on the evidence of a conspiracy should have been supplemented by a converse instruction based on defendant's denial of his connection with such conspiracy. The instruction complained of fully, clearly and fairly defines murder in the first degree and states the facts necessary to be found to establish a conspiracy or a concert of action between the defendant and his co-indictees in the commission of the crime; and it closes with the statement that "unless the jury find the facts to be as stated they will acquit the defendant." This, to the average mind, cannot be construed as otherwise than telling the jury if they find the facts as stated they may convict, but unless they so find them they will acquit. There is, therefore, no opportunity for the jury to have misinterpreted their province and more could not have been accomplished if the court had made a converse statement in detail of the facts which, if found, would have authorized an acquittal. The instructions given, which we have examined for the purpose of enabling us to properly dispose of defendant's contention, fairly presented the law for the jury's guidance under the evidence, and if more was desired a request should have been therefor. If the instruction complained of had simply told the jury, as in the Rutherford case, 152 Mo. 124, that if they found certain facts to be true they should convict and nothing more, the duty of the trial court to give an instruction telling them that unless they found these facts they should acquit, becomes apparent; likewise in the Jackson case, 126 Mo. l. c. 525, where the court, after stating what facts must be found to authorize a conviction, refused an instruction which stated that unless they so found such facts they would acquit; so, in the Fredericks case, 136 Mo. l. c. 58, where, as at bar, there was evidence of a conspiracy and the jury were told that if they found it to exist they might find the defendant guilty, but did not state that if they found to the contrary they would acquit. These cases, there-

*Converse Instructions.*

fore, and they are all that are cited by defendant, base the necessity of a converse instruction upon the absence of the very requirement found in the instruction complained of, which is nothing more than a converse statement of the jury's duty under the evidence. The writer concurred in the conclusion reached by the Commissioner in State v. Levitt, 278 Mo. 1. c. 378, as to the duty of the court to give a converse instruction to that given at the request of the State in regard to the defendant's explanation of his possession of certain stolen property, but this conclusion was not concurred in by the court, and hence is not an authority. It will suffice to say that if concurred in it would have been under a state of facts and in view of other instructions given which lacked the essential requisites found in that at bar.

There was no infraction in the instant case of the well-established rule that it is duty of the trial court to clearly, in a hypothetical manner, present the facts upon which the State relies for a conviction which, if found by the jury to be true, will authorize a verdict of guilty, and in like manner to present the facts upon which the defendant relies for his defense, which if found to be true will authorize an acquittal. This has been the course pursued from the establishment of our code of criminal procedure, and it was not departed from in the instant case. There is, therefore, no merit in the defendant's contention that a converse instruction should have been given.

Human depravity reached its lowest level in the commission of this crime. It was a ruthless, cold-blooded murder. Its cruel and sordid details are relieved by none of the palliating circumstances sometimes present and often interposed as defenses in cases of homicide. Despite these facts, the statement of which cannot but appall the normal mind, the defendant was accorded a fair and impartial trial and has no just ground of complaint. The judgment of the trial court is therefore affirmed. All concur.