THE STATE EX REL. F. H. STROHFELD v. ARGUS COX ET AL., Judges of Springfield Court of Appeals.—30 S. W. (2d) 462.

Court en Banc, July 8, 1930.

*C. W. Hamlin* for relator.

*Mann & Mann* and *John W. Miller* for respondents.

WHITE, J.—Certiorari to the Springfield Court of Appeals.

The Meyer Milling Company, a corporation, brought suit against the relator, Strohfeld, in the Circuit Court of Christian County, on

a promissory note for one hundred dollars. On change of venue to Lawrence County the case was tried and judgment rendered for the defendant. On appeal to the Springfield Court of Appeals the judgment was reversed and the cause remanded with directions to the trial court to enter judgment for the plaintiff.

The note, signed by Strohfeld, was payable to the order of George W. Wilson, trustee. It passed into the hands of one W. E. Smith, who later, before maturity, sold it to the Meyer Milling Company, plaintiff in the suit.

On a former trial of the case the verdict was for the defendant; on appeal to the Court of Appeals the judgment was reversed and the cause remanded. Then followed a second trial, with the result stated. The defense was that the note was procured by fraud and the plaintiff had due notice of the defect in the payee's title. The Court of Appeals held that the defendant assumed the burden of proving that such title was defective, and did prove it, but directed a verdict for the plaintiff on the ground that it, Meyer Milling Company, was a purchaser in good faith for value without notice, and therefore was a holder in due course under Section 838, Revised Statutes 1919.

The relator here asserts that the ruling of the Court of Appeals is in conflict with the rulings of this court in three particulars.

I. Proposition one relates to a holding by the Court of Appeals that a telephone conversation offered in evidence by the defendant to show notice to the plaintiff Meyer Milling Company of a defect in title was improperly admitted. That court thus stated the proposition as the principal issue in the case, quoting from the defendant's brief:

"We think that it can fairly be said that just two principal questions are involved in this appeal.

"First, did the trial court rule correctly in permitting Witness Howard to testify on behalf of the defendant, to a certain telephone conversation that he had with somebody relative to certain notes, of which the one in suit here was one; Second, If the court did rule properly in admitting that evidence, was it of such a character as would convict plaintiff of bad faith in purchasing said note without first making an investigation."

The opinion then relates the conversation referred to. Mr. Howard, a banker in Billings, testified that in the latter part of 1924 someone called on the telephone; he answered and the caller asked if it was the Bank of Billings. The witness answered that it was, and the caller said: "This is the Meyer Milling Company talk-

ing.'' Then followed a conversation in relation to notes connected with a deal in which Smith, who negotiated the note to the Meyer Milling Company, was engaged, regarding the sale of a mill at Republic. After talking about the notes, of which the note sued on was one, the caller asked about certain parties and whether their notes would be good, and among the parties was Strohfeld. The witness said:

''I told them the notes would be good in my judgment if there was no strings to them.''

He stated farther that the party at the other end of the line did not ask what was meant by strings on the notes: that was the end of the conversation.

The relator claims that the ruling of the Court of Appeals in holding the evidence improperly admitted is in conflict with two cases: Meeker v. Union Electric Company, 279 Mo. 574, and Star Publishing Company v. Warehouse Co., 123 Mo. App. 13. In the Meeker case the witness to the telephone conversation called a number and the answer was given from the number called as the party to whom the number belonged. The Court of Appeals in its opinion distinguishes that case as follows:

''A principal may be bound by a conversation when a party uses a telephone, calls his number in the usual manner and is answered by a person who says that he is the individual called or who answers the call on behalf of his principal at his principal's place of business. Under such circumstances, the presumption logically follows that the party answering is the party called and that he has authority to act or bind his principal as to the matter under consideration. But no such presumption may be fairly said to follow when conditions are reversed. When the party called must depend entirely upon the word of the party calling, as to the identity, the conversation is purely and simply hearsay, the same as a conversation with some unknown person face to face would be. [American Trust Co. v. Moore, 248 S. W. 983; Fougue v. Burgess, 71 Mo. 389.]''

The court then found it unnecessary to determine whether the evidence if admissible was of a character to convict plaintiff of bad faith.

We can add little in explanation of the distinction there made by the Court of Appeals. Where one is called by telephone with his number, and answers, admitting himself to be the person called, testimony of the caller relating the conversation ensuing is held admissible. The number called is owned by and under the control of the person to whose name the number is attached. It is certain that the answer is from that number, a circumstance tending to show that the person answering is the person called or one who has au-

thority to answer for him. But where the telephone call is from an unknown number and the person called answers and asks who it is, any reply as to the number from which the call comes or as to the name of the caller would be pure hearsay. There would be no competent evidence that the call came from the number it claimed to be. That is the distinction which the Court of Appeals makes and it is not in conflict with any ruling of this court.

The relator, however, claims it is in conflict with the ruling of the Court of Appeals in the Star Publishing Company case, supra, and therefore in conflict with this court because that case was cited by this court. A ruling of the Court of Appeals, in order to be in conflict with the ruling of this court, must have stated a proposition of law and determined it contrary to what this court has directly decided. We hold, therefore, there was no conflict in the proposition stated.

II. The second point is that, as held by the trial court, the defendant proved the title of Smith, who negotiated the note to the Meyer Milling Company, was defective and therefore a prima-facie defense was made out against the Meyer Milling Company in that it was not a holder in due course, and a directed verdict for plaintiff conflicted with certain decisions of this court. The opinion passes upon this question as incidental to the questions stated in the quotation from defendant's brief.

This calls for a construction of Section 838, Revised Statutes 1919, defining a holder in due course, and Section 842 providing that a holder to be charged with an infirmity in the title must have actual knowledge of it, and Sections 843 and 845, further defining who is a prima-facie holder in due course, free from any defect of title in the payee. In that construction the Court of Appeals, instead of conflicting with this court, followed the ruling in Downs v. Horton, 287 Mo. 414. That case was decided by the Springfield Court of Appeals and came on a certification to this court where the opinion of the Court of Appeals was adopted. It has never been overruled, nor criticized, but has been cited by us with approval in later cases. [Bond v. St. Louis & San Francisco Railway Co., 315 Mo. 1. c. 1003; Spencer v. Barlow, 319 Mo. 1. c. 845.]

In Downs v. Horton, the negotiable instrument law is exhaustively treated and authorities cited and discussed at length. We can add nothing which will further elucidate the subject. Briefly it was held that the plaintiff made out a prima-facie case by producing the note sued on. [Sec. 845, R. S. 1919.] That then the burden was on the defendant to prove fraud in the procurement of the note, and

notice, "actual knowledge," to the holder (Sec. 842, R. S. 1919) of the infirmity or defect in the title of the person negotiating it; that such burden remained with the defendant throughout the case. That after proof of such infirmity (Sec. 845) the burden was on plaintiff to prove that he acquired the note in due course, which did not mean that defendant was thereby relieved of proving notice to the plaintiff of such infirmity, that it merely required plaintiff to disclose the facts within his knowledge regarding his acquisition of the note. Then, absent any proof of notice to plaintiff of such infirmity, a directed verdict for plaintiff was proper. We called attention to the distinction between the burden of proof and what is sometimes called the burden of evidence, and said, l. c. 431 and 432:

"The term 'burden of proof' has two distinct meanings. By one is meant the duty of establishing the truth of a given proposition or issue by such a quantum of evidence as the law demands in the case in which the issue arises. By the other is meant the duty of producing evidence at the beginning or at any subsequent stage of the trial, in order to make a prima-facie case."

And further, l. c. 433:

"This evidence (of fraud) does not establish or tend to establish any specific fact showing that plaintiff had knowledge of the fraud; it merely raises a presumption in lieu of the fact, and the presumption calls upon the plaintiff to disclose the facts that are peculiarly within his knowledge. The plaintiff then gives in evidence all the facts and circumstances under which he acquired the paper and the presumption takes flight. Let it be assumed that the plaintiff's evidence is such that his good faith and want of notice is the only inference that a fair-minded person could draw from it; it then devolves upon the defendant, under the burden of proof resting generally upon him, to prove specific facts tending to show plaintiff's actual knowledge of the fraud or his bad faith."

The cases cited by relator as showing a conflict are Barz v. Fleischmann Yeast Co., 308 Mo. 288, and Toeneboehn v. Railway Company, 317 Mo. 1096; Peterson v. Railway Company, 265 Mo. 462. The effect of the holding in those cases is that where a prima-facie case is made out for a plaintiff and a defendant offers evidence which if true would defeat the cause of action, it is a question for the jury to say whether such contradictory evidence is true, even though it is uncontradicted.

In the Barz case the court said, l. c. 300, that a prima-facie case was made out resting on a presumption that the chauffeur while driving his master's car, the car which did the damage sued for, was acting in the line of his employment, but it "was thus overthrown by the testimony of the plaintiff's own witnesses." The court then

adds that the jury was not bound to believe respondent's evidence though not contradicted.

The Peterson case was where the defense relied upon was contributory negligence after a prima-facie case was made out for the plaintiff. It was held that the credibility and weight of the evidence was for the jury even though it was not contradicted. Contributory negligence was an affirmative defense.

In each of those cases the burden was on the defendant to prove contributory negligence, and that burden remained with it throughout the case. Here the burden is on the defendant to prove notice of infirmity in the title to the note and that burden remains with the defendant throughout the case.

The Toeneboehn case, 317 Mo. l. c. 1105, was another case of contributory negligence, where it was held that the testimony as to contributory negligence, though not contradicted in any direct way, could not be held to be destroyed by the prima-facie case made by the plaintiff. There Bond v. Railway, 315 Mo. l. c. 1003, was cited with approval. In the Bond case we cited Downs v. Horton, distinguishing between the burden of proof and the burden of evidence. The defense claimed that the presumption of negligence implied in the doctrine of *res ipsa loquitur* was removed or vanished when the defendant proved that *vis major* was the cause of the wreck which caused the damage sued for. The court said that the presumption arising in the *res ipsa loquitur* doctrine did not relieve the plaintiff of proving that the defendant was negligent in the first instance, but merely relieved him of alleging and proving *specific* negligence so that the issue of negligence remained in the case, no matter how cogent and uncontradicted was the evidence of the plaintiff that there was no negligence.

The rule may be stated in this way: where a party asserts the affirmative of a proposition and proof of it is nesessary to sustain his point, the truth and weight of his evidence though uncontradicted is for the jury. In this case the burden of proof was *not* upon the plaintiff to establish that it had *no* notice of the infirmity of the note. It was for the defendant to prove that the plaintiff *had* such notice, and the burden of proving that fact rested with defendant throughout the case. The defendant relies, not upon evidence, but upon a presumption to make out a prima-facie case of notice.

A presumption is not evidence. The presumption upon which defendant relies is tenuous and vanishes when evidence is introduced on the point. It cannot be submitted to the jury as an issue of fact where there is evidence explanatory of how the act was done. [Stack v. General Baking Company, 283 Mo. l. c. 420-421.] The

Court of Appeals in following Downs v. Horton, did not conflict with our last ruling on that point.

III.   The third claim of conflict is that the word "trustee" following the name of George W. Wilson, the payee in the note, is notice to a subsequent purchaser of defect of title in the payee.   That point is only referred to in the opinion as having been decided on the former appeal.   Relator says on this point: .

"The court elaborated upon that point in its first decision in this case and having referred to that opinion in this case the court will consider the first opinion as a part of this opinion."

We do not understand that in this proceeding we can quash a former opinion of the Court of Appeals.   We are asked to quash only the present opinion.   The former opinion is not involved. However, we may as well dispose of the point briefly.   The ruling in that regard is said to be in conflict with the case of Sanford v. Van Pelt et al., 314 Mo. 175.   What was held in that case was that a conveyance of real estate with the word "trustee" following the name of the grantee was not mere *descriptio personae*, but was notice that the grantee held the property in trust for some other person, whose name was not disclosed.   The word "trustee" in the note here may be said to charge the purchaser of the note with notice that the payee held it in trust for some other purpose than for its own benefit, but it would not charge him with notice that the payee had no right to the note, or that the maker was under no obligation to pay it.   It is immaterial to the maker who is beneficiary in the note so long as he is liable.   That is the distinction drawn by the Court of Appeals on that point (4 S. W. (2d) 864), and it does not conflict with any ruling of this court.

The writ accordingly is quashed.   All concur.