THE STATE v. ANNIE BEREZUK, DEWITT GATHING and VIRDELL ROBINSON, Appellants.—55 S. W. (2d) 949.

Division Two, December 14, 1932.

*Sidney R. Redmond* and *Henry D. Espy* for appellants.

628

*Stratton Shartel,* Attorney-General, for respondent; *Otis Patterson* of counsel.

COOLEY, C.—By information in the Circuit Court of the City of St. Louis, the defendants were charged with the crime of rape alleged to have been committed by force upon one Genevieve Arciszewski on December 16, 1930. They were tried jointly and all were convicted, the jury by separate verdicts fixing the punishment of defendants Berezuk and Robinson at thirty years' imprisonment in the penitentiary and of Gathing at fifteen years. In due course defendants were sentenced in accordance with the verdicts and all have appealed.

The prosecutrix, Genevieve Arciszewski, was between sixteen and seventeen years of age at the time of the alleged offense. Her mother had died three or four years prior to that time. For a short time after her mother's death she had lived with a married sister, Helen Zelinski, then for a time in the home of defendant Annie, or Anne, Berezuk, a married woman, who is prosecutrix' aunt. A year or so, perhaps longer, before December 16, 1930, Mrs. Zelinski had taken prosecutrix from the Berezuk home to her own where prosecutrix thereafter resided until after the events herein involved. At the time of the trial she was in a correctional institution in St. Louis but it is not shown when or why she was sent there. Prosecutrix and defendant Annie Berezuk are white women. Defendants Gathing and Robinson are negroes. Though it is not clearly shown we infer from the record that Robinson is a young man and that both he and Gathing were single at the time in question. The State's contention is, and its evidence tended to show, that defendant Robinson had carnal knowledge of prosecutrix forcibly and against her will and that defendants Annie Berezuk and Gathing were present actively aiding and abetting Robinson in the commission of the crime

The State's evidence tended to show that prosecutrix had met and become acquainted with Robinson and Gathing a year or so before the alleged offense, the three having worked at the same place; that on December 16, 1930, prosecutrix was working for the Holeman Paper Box Company and while on her way home from work shortly after five P. M., that evening she met her aunt, Mrs. Berezuk, who asked her to go home with her; that she declined to do so; that thereupon Mrs. Berezuk "gave a signal and Robinson drove up" in an automobile; that Mrs. Berezuk and Robinson "told me to get into the car and I wouldn't do it, and so Robinson told me if I wouldn't go I would have to go and he pushed me in and took me to Anne Berezuk's house," Mrs. Berezuk going along in the car; that on arrival at Mrs. Berezuk's abode, which was on the second floor of a house at 1421 O'Fallon Street, "they" took her upstairs where until about eight o'clock she sat on the bed and cried, telling them she wanted to go home; that they refused to let her go home; that Gathing was there when she and her captors arrived; that about eight o'clock her aunt took off prosecutrix' hat and coat "and they were fooling around and talking and about ten o'clock she told me to get ready to go to bed;" that she (prosecutrix) said she did not want to and "she (Mrs. Berezuk) pulled off my clothes then, and Anne Berezuk and Gathing got into bed, and they pushed me in bed, Anne Berezuk and Robinson;" that Robinson helped to disrobe her; there was but one bed in the room and all four were in that bed; that "Anne Berezuk held my shoulders down and Gathing held my

mouth, to keep me from hollering," while Robinson forcibly had sexual intercourse with her; that she tried to "holler" but could not and resisted to the extent of her ability.

Prosecutrix' testimony further tends to show that December 16th was Tuesday and that she remained at her aunt's residence, not being permitted to leave, until the next Saturday evening, and that each night Robinson "forced" her to have intercourse with him; that on Saturday evening her sister, Mrs. Zelinski, came with the police "and when my aunt knew it was my sister she told Gathing and Robinson and they took me downstairs and held me in the lavatory until my sister left with the police." She testified that after Mrs. Zelinski and the police left Mrs. Berezuk said she had a friend in East St. Louis and took prosecutrix there by street car where the two remained that night and the next day, returning to Mrs. Berezuk's residence Sunday evening where she spent that night and part of Monday; that on Monday she "got away" while her aunt was downstairs in the lavatory and the men were absent and went to where her sister was and told the latter her story. She explained, that while she was at her aunt's home the windows were nailed shut and the door kept locked and she was watched and could not escape or call successfully for help though she tried to make outcry.

On cross-examination she said that Robinson exhibited a knife when he drove up to the place where she and her aunt were standing and ordered her to get into the car on the evening of the 16th; that on that occasion she "tried to holler" but couldn't because she had a cold; she could and did "holler" "but not loud enough;" was "scared to look around," and did not know whether there were people near in the street or not. She did not know why she made no outcry or attempt to escape while on the street car en route to and from East St. Louis.

Helen Zelinski testified that when prosecutrix failed to come home the night of the 16th she began looking for her and on Saturday evening about seven o'clock she and her husband and another sister went to Annie Berezuk's residence and Mrs. Berezuk refused to open the door but told them to "go around to the back;" that they could not find the back entrance and "went and got the police," and "made a date with the police" to notify witness and her sister if they found prosecutrix. It seems they did not know prosecutrix was then at Mrs. Berezuk's. It was immediately after that occurrence, according to prosecutrix' testimony, that Mrs. Berezuk took her to East St. Louis.

Mrs. Zelinski said that she then returned to her home and "when I got home Virdell Robinson called me up." [Note. She had not seen Robinson at Mrs. Berezuk's and there is no evidence that she

had been informed he was there. The testimony that followed here will be detailed in connection with the discussion of defendant's objection thereto.] Mrs. Zelinski further testified that prosecutrix called her and had some conversation with her by telephone Monday night and that she told her to come home, which prosecutrix did and informed her of what had happened.

The defense conceded that Robinson had had sexual intercourse with prosecutrix at the home of Mrs. Berezuk but contended that it was with her concurrence. Defendants testified in their own behalf. Their testimony and that of a number of witnesses called by them tended to show that prosecutrix and Robinson had maintained sexual relations with each other prior to December 16, 1930, and that on that evening she went voluntarily and by appointment to her aunt's home to meet Robinson and remained there and submitted to his embraces willingly. Their evidence tended strongly to show a similar illicit relation between Gathing and Mrs. Berezuk. The reputation of prosecutrix for truth and veracity and for morality was not assailed.

■■ I. Defendants contend that the evidence is not of sufficiently substantial nature to sustain a conviction and that the trial court should have directed a verdict of not guilty; citing State v. Donnington, 246 Mo. 343, 151 S. W. 975; State v. Tevis, 234 Mo. 276, 136 S. W. 339, and State v. Remley (Mo.), 237 S. W. 489. We have examined those cases and others and are of the opinion they do not sustain defendants' contention under the evidence in this case. Conceding, as does learned counsel for the State, that in some respects the prosecutrix' story seems improbable, yet it is not impossible of belief and if true it makes a case against the defendants. There was some contradiction between her testimony on the trial and prior statements made by her but not to such extent that we can say it destroys the probative value of her testimony. Her reputation for truth and veracity and for morality was not attacked. She was contradicted by defendants' witnesses as to previous association with Robinson and on other matters testified to by her, but that and her credibility as a witness were matters for the determination of the jury. Prosecutrix was not corroborated as to the occurrences at Mrs. Berezuk's home nor as to her resistance to the alleged assault but Mrs. Berezuk's refusal to admit prosecutrix' sisters when they came seeking her and the hasty spiriting away of prosecutrix may be viewed as some corroboration of prosecutrix' testimony that she was being detained against her will. We have carefully considered the whole evidence, which we have but outlined above, and while we are not impressed that the State made a strong

case we cannot say the verdict is without substantial support in the evidence. Whether or not it should have been set aside as being against the *weight* of the evidence and a new trial granted on that ground was for the consideration of the trial court rather than of this court.

■ ■ II. We have noted that Mrs. Zelinski testified that when she returned home after her search for her sister Virdell Robinson called her up by telephone. Thereupon this testimony followed: "Q. You said that Robinson called you up? A. Yes, sir. Q. Did he tell you who it was that was talking with you? A. Yes, sir. Q. Tell the jury what he said to you over the telephone." Defendants objected because it was not shown that witness knew Robinson's voice. The objection was overruled, defendants excepting, and the witness answered: "He called me up and asked me if I was looking for Genevieve and I told him I was, and he said what was I bothering her for, and I said 'that is my sister and I want her home,' and he said that Genevieve was his sweetheart and he wanted her. And I said: 'She is a white girl and she can't be his sweetheart.' And he said he would paint her black. And he said if I gave him ten dollars he would leave her alone. And he said if I did bother Genevieve or him he would have me killed. And I said there was a law for that, and he said he could handle the law too."

On cross-examination the witness testified that the telephone at her house was not in her name but in that of her landlady; that she did not know whether or not Robinson knew her telephone number or how the person who called her obtained it; that she had never seen Robinson and did not know and had never before heard his voice; that the only reason she had for believing the person who called her was Robinson was "because he told me that was his name. . . . I wouldn't have believed it if he hadn't told me."

In Meyer Milling Co. v. Strohfeld, 20 S. W. (2d) 968, the Springfield Court of Appeals had before it the subject of testimony of a telephone conversation on facts analogous to those here presented. That court gave the question careful and thorough consideration, reviewing prior decisions in this and other jurisdictions. The court said there is a distinction between those cases in which the witness calls a number or place of business by telephone and receives a reply purporting to come from the party called, or the representative of such party, and a case wherein the witness is the party called and the party calling is unknown to the witness but represents himself to be a particular person; that

"A principal may be bound by a conversation when a party uses the telephone, calls his number in the usual manner, and is answered

by a person who says he is the individual called, or who answers the call on behalf of his principal at his principal's place of business. Under such circumstances, the presumption logically follows that the party answering is the party called and that he has authority to act or bind his principal as to the matter under consideration. But no such presumption may be fairly said to follow when conditions are reversed. When the party called must depend entirely upon the word of the party calling, as to his identity, the conversation is purely and simply hearsay, the same as a conversation with some unknown person face to face would be."

The court then quotes from 3 Wigmore on Evidence (1904), Article 2155, page 2923, to like effect and says that the text states substantially the rule followed "in each case wherein this particular question has been fairly raised," citing many cases from other jurisdictions.

In the Meyer Milling Company case a writ of certiorari was issued by this court, it being claimed that the Court of Appeals' decision on the point above mentioned contravened certain prior decisions of the Supreme Court. This court, en banc, State ex rel. Strohfeld v. Cox et al., 325 Mo. 901, 30 S. W. (2d) 462, quashed the writ. It quoted the portion of the appellate court's opinion which we have quoted, adding observations of its own of like tenor, and held that the Court of Appeals' decision was not in conflict with any ruling of this court. See, also, for collation of authorities on this subject the extensive annotation to Dorchester Trust Co. v. Casey et al. (Mass.), 71 A. L. R. 1, p. 5 et seq. The decided weight of authority sustains the distinction noted in Meyer Milling Co. v. Strohfeld and State ex rel. v. Cox, supra.

If the witness recognizes the voice of the person calling him of course the telephone conversation is admissible. And the identification may be established by circumstances. [Meyer Milling Co. v. Strohfeld, supra, and authorities cited.] But in this case there was no recognition of the voice nor were there any circumstances shown tending to identify Robinson as the person who called Mrs. Zelinski. It cannot be said even that the information relative to the subject-matter of the conversation which the antiphonal speaker seemed to possess sufficiently identified such speaker as Robinson because under the facts and circumstances shown such information may have been possessed by others. We think the testimony was incompetent on the showing made. That it was prejudicial to defendants, especially in view of the implied admission and the threats contained in the alleged statement, cannot be doubted. Its admission was reversible error.

634

III. Complaint is made of Instruction No. 1 for that it improperly defines the term "ravish." Instruction No. 1 reads:

"If you believe and find from the evidence that the defendant Virdell Robinson at the City of St. Louis, Missouri, on or about the 16th day of December, 1930, did feloniously and forcibly and against the will of the prosecuting witness, Genevieve Arciszewski, make an assault upon her, the said Genevieve Arciszewski, and feloniously and forcibly and against her will did ravish and carnally know her the said Genevieve Arciszewski, then you will find the defendant Virdell Robinson guilty of rape as charged in the information and fix his punishment at imprisonment in the penitentiary for such time as you deem proper, not less than two (2) years. Unless you so find you will acquit him.

"All persons who act together with a common intent and purpose in the commission of a crime are equally guilty and equally punishable under the law. Therefore, if you believe and find from the evidence that defendants, Annie Berezuk and DeWitt Gathing, were present at the commission of the crime, if you believe any crime was committed, and were actually aiding and abetting the said Virdell Robinson in committing the crime, if any, as above described, then each of them are equally guilty with the said Virdell Robinson and you will so find and fix the punishment at imprisonment in the penitentiary for any length of time you deem proper, not less than two years. Unless you so find you will acquit them.

"By the terms 'ravish' and 'carnally know' is meant sexual intercourse; that is, the actual penetration of the female private parts or organ by the male private parts or organ in the act of sexual intercourse. You cannot find that the prosecuting witness was ravished and carnally known unless you believe from the evidence that the defendant, Virdell Robinson, penetrated the private parts of the body of the said Genevieve Arciszewski with his private parts to some extent; and you cannot find that such intercourse was forcible or against the will of the said Genevieve Arciszewski or without her consent, unless you find that she made the utmost resistance of which she was capable to prevent it, and whether or not such consent was given should be determined from all the facts and circumstances *which you consider proved by the evidence.*" [Italics ours.]

The definition of the term "ravish" in the instruction is not correct, since to ravish means and requires more than to have sexual intercourse. The word "ravish" implies force and means to have carnal knowledge of a woman by force and against her will. Webster's New International Dictionary. But could that error have prejudiced defendants? In the first paragraph of the instruction the court told the jury that in order to convict Robinson they must

find that he "forcibly and against her will did ravish and carnally know" the prosecutrix, and in the second paragraph that to convict Berezuk and Gathing the jury must find Robinson was thus guilty and that they were present aiding, etc. Having so directed the jury the court then tells them that "ravish" and "carnally know" mean sexual intercourse, etc. Taken together the directions in the instruction state that to authorize conviction of Robinson he must be found to have had sexual intercourse with prosecutrix forcibly and against her will and that Berezuk and Gathing must have aided him in so doing in order for them to be guilty. It is argued that the jury might have been misled into believing from the definition given that mere sexual intercourse without force would constitute the crime charged. We are not inclined to think so but suggest that a better definition for a case of this kind is that approved in State v. Cottengim (Mo.), 12 S. W. (2d) 53, 57.

■ IV. Defendants also complain of the court's refusal to give an instruction requested by them telling the jury that "the mere having of sexual intercourse by a man with a woman does not constitute the crime of rape. In order to constitute rape the accused must not only have sexual intercourse with the female but such act must be accomplished forcibly and violently and against the will of the female; that is, without her consent and against her utmost resistance." The court refused the instruction, stating: "That is already contained in the instructions as given." The requested instruction correctly states the law and in view of the fact that the defense was based upon the claim that the prosecutrix consented to the intercourse and of the further fact that the offense charged, particularly when alleged to have been committed by a negro upon a white woman, naturally arouses strong resentment, it would not have been amiss for the court to have given it. But we cannot say that its refusal would justify reversal of the judgment. As the court stated, the matter therein contained was included in Instruction No. 1, above quoted. And we have held that where the main instruction submitting the facts necessary to be found in order to authorize conviction specifically tells the jury that unless they so find the facts they must acquit, the converse of such main instruction is sufficiently stated. [State v. Dougherty, 287 Mo. 82, 228 S. W. 786; State v. Sloan, 309 Mo. 498, 274 S. W. 734.]

■ In this connection, in view of the possibility of another trial, we call attention to an error in said Instruction No. 1, not referred to by counsel, viz., the use of the concluding words "which you consider proved by the evidence," which we have italicised in quoting. Similar language used in an instruction on the same subject (con-

sent of the female) was condemned in State v. Gentry, 320 Mo. 389, 8 S. W. (2d) 20, 28, as susceptible of being understood by the jury to mean that they were at liberty to consider only certain parts of the evidence and to disregard other parts without any consideration. It was there said the instruction should have followed the usual and approved form by directing the jury that the issue of consent should be determined from a consideration of all the facts and circumstances *in evidence*.

There are some other alleged errors urged here by defendants which we need not notice. Some relate to evidence not objected to at the trial, others to matters occurring at the trial which are not sufficiently presented in the motion for new trial to entitle them to review. They do not impress us as having substantial merit, even should they arise on another trial. For the reasons indicated the judgment of the circuit court as to all three defendants is reversed and the cause is remanded. *Westhues* and *Fitzsimmons, CC.,* concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All of the judges concur.