**STATE of Missouri, Respondent,**

v.

**Alvin Herden VIRDURE, Appellant.**

No. 49815.

Supreme Court of Missouri,
Division No. 2.
Oct. 14, 1963.

James J. Rankin, St. Louis, for appellant.

Thomas F. Eagleton, Atty. Gen., Jefferson City, Dale Reesman, Sp. Asst. Atty. Gen., Boonville, for respondent.

PRITCHARD, Commissioner.

Defendant was found guilty by the verdict of a jury of the possession of narcotics, and since he was charged in the substitute information filed in lieu of indictment with being a habitual criminal, this fact being found by the trial court, [RSMo § 556.280, V.A.M.S.] his punishment, after his motion for new trial was overruled and allocution was granted, was set by the court at confinement in the Department of Corrections of the State of Missouri for a period of ten years. From his judgment of conviction, defendant has perfected his appeal.

On January 31, 1962, officer Paul McCulloch, a member of the Canine Deployment Division of the St. Louis Police Department, went to the premises of defendant (the Algiers Herb Company) at 3360 Union Boulevard in St. Louis, arriving there around 11:30 or 11:45 A.M. Other officers of the Police Department were also there, but defendant was not then present. Defendant came to his premises later after his then lawyer made arrangments for defendant to talk to the police, who were looking for defendant for a peace disturbance charge. The officers had entered the store part of defendant's premises prior to defendant's arrival, and were waiting for him there. Defendant was then placed under arrest on the peace disturbance charge (for which there was actually no formal charge pending, and for which no further proceedings were had, but defendant does not attack the validity of the arrest).

After the arrest, officer McCulloch asked the defendant if he could look around and make a search of the premises, and defendant told him he could look over the entire premises, he had no objection whatsoever, that the officer could look around and search all he wanted to. Defendant also gave officer McCulloch permission to search his car, and he unlocked the trunk of the car for the search. At no time did the defendant attempt to prevent the inspection and search.

Officer McCulloch then went out to his police car and brought into the store part of defendant's premises his German Shepherd dog and had him conduct a search thereof, this dog having remained in the police car during all of the prior arrest proceedings. The dog had been given special-

ized training to seek out and find marijuana, and had performed that function approximately 500 times. They then went outside to where defendant's car was parked, and had the dog make a search of the interior and trunk thereof, after defendant had unlocked it. The officer let the dog loose, gave him a command, and he went into the trunk and sniffed around, then remained in one spot, "patted around" with his nose on the spare tire and tried to push it away. The officer moved the spare tire and found a green substance on the floor mat. He then called officer Longinette who scraped up the substance, put it in an envelope, and later delivered it to the police chemist who made an analysis that this substance was dried leaf fragments of the plant Cannabis Sativa, otherwise known as marijuana.

Officer McCulloch thereafter went inside and down to the basement of the house at 3360 Union, and there released the dog, gave him a command, and the dog began sniffing around and got up on a shelf in the northwest corner of the basement where there were about 75 or 100 red and green colored boxes. The dog knocked four or five of these to the floor, then got down to where the officer could see him, and came back around the hall with one of the boxes in his mouth. The dog brought the box to officer McCulloch who put his initials on it. At the trial, McCulloch testified that the box was the same one the dog had brought to him, and that its contents, which the chemist found and testified also to be marijuana, appeared to be the same.

Defendant in testifying in his own behalf, admitted a conviction for the possession of marijuana in 1944 and a conviction for receiving goods stolen from an interstate shipment in 1951. He said further that he did not know narcotics were within the premises or in the automobile; that other persons had access to the basement where the narcotics were discovered; that in the week prior to the incident in question he had several flat tires and his car was not in his control at all times; and that his lady friend, (one Denoose Quarrels) his brother, and other individuals often drove his automobile. Defendant's business, which he has been in for about fourteen years, consists of the sale of all kinds of medicines, tonics, remedies, oils, incense, candles, powders, a few herbs and all kinds of soda—just a regular confectionery.

Defendant first contends that the trial court erred in failing to sustain defendant's pretrial motion to dismiss the substitute information (in lieu of indictment) for the reason that said information failed to charge a crime, it was duplicitous and failed to apprise defendant of the crime with which he was charged. In elaboration, defendant says the statute, set out below, describes acts or offenses disjunctively, and therefore the indictment or information should charge them in the conjunctive; that to "possess" narcotics or "to have under his control" narcotics are separate and distinct offenses.

■ The substitute information, filed June 11, 1962, eight days before trial, first charged defendant's previous convictions, then went on to charge the present alleged offense that defendant, "on January 31, 1962, at the City of St. Louis aforesaid, did then and there unlawfully and feloniously *have in his possession or under his control* a certain quantity of narcotic drug, to wit: 3.61 grams of the plant, Cannabis Sativa, commonly called marijuana. In violation of Chapter 195, Section 195.020, Revised Statutes of the State of Missouri, 1959." (Emphasis added.)

Sec. 195.020 [RSMo 1959, V.A.M.S.] provides: "It is unlawful for any person to manufacture, *possess, have under his control,* sell, prescribe, administer, dispense, *or* compound any narcotic drug, except as authorized in this law, or to possess any apparatus, device or instrument for the unauthorized use of narcotic drugs * * *." (Emphasis added.)

The Missouri cases cited by defendant do, in general, support his contention that where several different acts or offenses are set forth in the disjunctive, the indictment or information should charge them in the con-

junctive, if they are not repugnant, "else it will be ill as being uncertain." State v. Hartman, 364 Mo. 1109, 273 S.W.2d 198; State v. Settle, 329 Mo. 782, 46 S.W.2d 882; State v. Fox, Mo., 46 S.W.2d 544; State v. Barr, 326 Mo. 1095, 34 S.W.2d 477. In the one cited case most directly in point with defendant's contention, United States v. MacKenzie, (D.C.Me.) 170 F.Supp. 797, the defendant was charged under 26 U.S.C.A. §§ 5174(a) and 5601 by having "in his possession or custody, or under his control" an unregistered still and distilling device, following the wording of said Sec. 5174(a). The court dismissed the indictment upon one of the stated grounds (as to Count I) that, "* * * where a statute specifies in the alternative several acts constituting an offense, an indictment may allege commission of the offense by all the acts mentioned, using the conjunctive 'and' where the statute uses the disjunctive 'or'. * * * It is equally well settled, however, that an indictment which alleges the several acts constituting the statutory offense in the disjunctive or alternative lacks the necessary certainty and is wholly insufficient. (Citing The Confiscation Cases, 20 Wall. 92, 104, 87 U.S. 92, 104, 22 L.Ed. 320, 322)."

Under the wording of the statute and substitute information here in question, and upon the facts and circumstances in this case, we must reject defendant's contention that the information is duplicitous and that it did not apprise the defendant of the crime with which he was charged, and we must take a view contrary to that expressed by the court in United States v. MacKenzie, supra.

■ It is our view that while the words "possession" and "control" are not precisely synonymous (so that they may be used interchangeably) which would bring this case within the exception to the "disjunctive-conjunctive" rule which is recited in the cases of State v. Ellis, 4 Mo. 474, 477; State v. Moore, 61 Mo. 276, 278 and State v. Bragg, Mo.App., 220 S.W. 25, 27, (relied upon by the state in its contention that the words "possess" and "control" are synony-

mous) these words, as to their meanings, do have common elements. They do not connote entirely separate and distinct acts as constituting an offense. In State v. Lane, 221 Mo.App. 148, 297 S.W. 708, 709, the court said, "Webster's International Dictionary gives the legal definition of possession as '[o]ne who has physical control of the thing and holds it for himself.' All the definitions contained in recognized law dictionaries indicate that the element of custody and control is involved in the term 'possession.'" See also State v. Lunfrunk et al., Mo.App., 279 S.W. 733, 735; State v. Compton, Mo.App., 297 S.W. 413, 414.

In Webster's Third New International Dictionary, the words are defined: "Possess" means "to take into one's possession;" "seize or gain control of;" "to enter into and influence powerfully or control." "Possession" means "something owned, occupied or controlled;" "the act or condition of having in or taking into one's control or holding at one's disposal." See the variety of definitions of the word "possession," 72 C.J.S. p. 233. See also "Possession" (control, care or custody), 33 Words and Phrases p. 80; "control," 9A Words and Phrases pp. 4, 23; and "custody," (charge, control or possession) 10 Words and Phrases p. 720.

Under the circumstances of this case, we hold that defendant was not misled or prejudiced by the disjunctive allegation of the substitute information of the words "have in his possession or under his control" a certain quantity of narcotic drug for the reasons that the quoted words relate to the same act; their ordinary and legal meanings are interrelated; and each has elements of the other. Put another way, it could reasonably be said that since defendant had the possession of the narcotic drug on his premises and in his automobile, his control and custody were integral parts of and stemmed from such possession. The information was not bad for uncertainty. The trial court did not err, therefore, in refusing to dismiss the substitute information.

This is not to say, however, that under the holdings of the above cases cited by defendant that other disjunctive words in the statute, e. g., "to manufacture, sell, prescribe, administer, dispense or compound any narcotic drug, etc. * * *," would not have to be pleaded in the conjunctive, since these words constitute separate and distinct acts relating to the condemned narcotic drug.

■ Defendant's next point that the trial court erred in failing to suppress as evidence the narcotics found by the police officers, on the ground that the search was conducted in violation of defendant's constitutional rights is without merit. The testimony of the five police officers reveals without question that defendant freely, and without coercion voluntarily gave his consent to the search of his premises and automobile. (This fact was found by the trial court on the hearing on the motions to suppress evidence.) Defendant's own testimony given at the trial was that he told the officers they could search anytime, anyplace, anywhere they wanted; that they were free to look around the place.

■ Defendant's suggestion that the presence of the Police dog amounted to coercion is not supported by the record, since the evidence is that the dog was not brought from the police car until after defendant was arrested and gave his consent to the officers for the search. The arrest here was upon a charge of peace disturbance, for which arrest the officers had an order.

Under these facts, the consent to search given by defendant is binding upon him. State v. Lee, Mo., 11 S.W.2d 1044, 1045; State v. Tull, 333 Mo. 152, 62 S.W.2d 389, 392; State v. Burney, 346 Mo. 859, 143 S.W.2d 273, 274; State v. Foster, Mo., 349 S.W.2d 922, 924.

■ During cross-examination of defendant by counsel for the state, the following transpired:

"Q. (By Mr. Roche) Were you later, at any time, Mr. Virdure, convicted here in St. Louis, Missouri, of fortunetelling and given a fine?

"Mr. Rankin: Just a minute. I am certainly going to object to any question like that.

"The Court: Sustained.

"Mr. Rankin: Counsel knows that is not true, improper, and I would like to approach the bench.

"The Court: I have sustained the objection.

"(The following proceedings took place at the bench without the hearing of the jury:

"Mr. Rankin: Is this a state court you are referring to, I would like to have further information.

"Mr. Roche: Misdemeanor.

"Mr. Rankin: I think counsel is asking about a Police Court thing. Are you referring to a State conviction or Federal—

"Mr. Roche: I don't know. It is on the sheet given me as to arrests and convictions, and it would be my understanding that this would be a misdemeanor conviction.

"Mr. Rankin: I would like to say this, then: I want to object to that and reluctantly ask the Court to declare a mistrial because of counsel referring to a conviction for fortunetelling, when counsel hasn't even taken the trouble to find out what court the conviction was in. We all know those are Police Court cases and improper to be inquired about. It is an attack on his character.

"The Court: I will sustain the objection and overrule the motion for a mistrial.

"Mr. Rankin: I would like the Court to instruct the jury to disregard the last question of counsel.

"The Court: Yes.

"(Proceedings were then resumed within the hearing of the jury as follows:)

"The Court: The last question is stricken from the record and the jury will disregard it."

Defendant claims that the foregoing amounts to misconduct of the assistant circuit attorney in his cross-examination of defendant which deprived him of a fair trial.

It does not definitely appear here whether the question asked by counsel for the state related to a misdemeanor; counsel stated he did not know, but it was his understanding that this would be a misdemeanor conviction. Counsel for the state did not pursue the matter any further after defendant's objection. Assuming that the matter inquired of defendant was improper in that it was not a felony or misdemeanor conviction within the permissible provisions of Secs. 491.050 and 546.260, RSMo 1959, V.A.M.S. for impeachment of an accused who takes the witness stand in his own behalf, yet no prejudicial error was committed against defendant, because as indicated above, the court sustained the objection and at first opportunity instructed the jury to disregard it. The trial court did not abuse its discretion in refusing to declare a mistrial. State v. Hamilton, 340 Mo. 768, 102 S.W.2d 642, 646; State v. Robinson, 344 Mo. 1094, 130 S.W.2d 530, 532; State v. Ronimous, Mo., 227 S.W.2d 58, 59.

 We do not consider defendant's assignment of error that his motion for judgment of acquittal made at the close of the state's case was not sustained, inasmuch as defendant then proceeded to testify in his own behalf. In this situation, such assignment of error is deemed waived. State v. Vincent, Mo., 321 S.W.2d 439; State v. McIntosh, Mo., 333 S.W.2d 51, 60; State v. Washington, Mo., 364 S.W.2d 572. However, defendant renewed his motion

for judgment of acquittal at the close of all the evidence, and assigns as error the court's failure to sustain same.

 Defendant first says, under this assignment of error, that the state failed to prove that he knew of the presence of the narcotics in his basement or in his automobile. We deem the state's evidence ample upon this point. Defendant was in the possession of his automobile and his premises when the marijuana was discovered by the officers. From this fact and the inferences to be deduced therefrom, the jury could reasonably find, as it did, that defendant knew the narcotic drug was there upon and in his property. State v. Edwards, Mo., 317 S.W.2d 441; 72 C.J.S. Poisons § 7, p. 178, where it is said, "A defense that accused had no knowledge of the presence of the drug in his possession merely creates a conflict with a prima facie case made out by the prosecution showing possession." The credibility of defendant's testimony as to his lack of knowledge that the marijuana was in his premises and automobile, and the access that other persons had to both items of his property, was for the jury.

Defendant next says, as to the submissibility of the state's case, that it failed to prove that the possession of the narcotic drug by the defendant was without prescription or that it was not in a container in which it might have been delivered by the sellor or dispenser, or that the narcotics had not been obtained from a pharmacist. (These are some of the exceptions to the statute contained in Chap. 195, RSMo 1959, V.A.M.S.)

 Defendant says the burden of proof is on the state to show he was not within the exceptions to the statute, citing Kansas City v. Wilhoit, Mo.App., 237 S.W.2d 919. That case does set forth the general rule that where an exception to the statute or municipal ordinance is relied upon as a defense, and the exception is a part of the enacting clause, or its terms are part of the description of the offense, the burden of proof is upon the prosecution to prove that

the accused is not within the exception or exemption, except in certain cases where the facts to prove such negative are peculiarly within the knowledge of the accused.

We comment in passing that these facts constituting the claimed exceptions would be peculiarly within the knowledge of the accused. The state would have no way of knowing them, except as to the box container which was in evidence. There is, however, another reason why defendant's contention as to this issue must be rejected. Sec. 195.180, RSMo 1959, V.A.M.S., provides: "In any complaint, information, or indictment, and in any action or proceeding brought for the enforcement of any provision of this law, it shall not be necessary to negative any exception, excuse, proviso, or exemption, contained in this law, and *the burden of proof of any such exception, excuse, proviso or exemption, shall be upon the defendant.*" (Emphasis added.) This statute (unchallenged here) disposes of defendant's above argument as to burden of proof.

■ The last point of defendant concerns the propriety of the giving of Instruction No. 4, which is as follows:

"The Court instructs you that in determining whether or not the drug mentioned in the evidence was in the possession of the defendant, you may take into consideration all the facts and circumstances in evidence. It is not necessary for the State to prove the intent on the part of the defendant, Alvin Her*n*den Virdure, to use said drug, or to prove that he intended that said drug be used in any particular manner, if you find that he had it in his possession. It is sufficient for the State to show that the drug was in his custody and possession, knowingly and intentionally.

"The intent with which an act is done may be proven by direct and positive testimony, or the intent may be inferred from all the facts and cir-

cumstances surrounding and attending the act, as shown by the evidence in the case, and any intent in this case must be determined by the evidence given in this case."

Defendant argues that the above instruction is confusing, argumentative, assumed defendant had possession of the narcotics and that possession "was knowing;" that it incorrectly stated the requisite knowledge and intent, and shifted the burden of proof to defendant on this issue.

The instruction consists largely of abstract and cautionary statements to the jury. It argues no fact or issue, and assumes as established no fact. The instruction requires the jury in its determination to find "whether or not" the drug was in the possession of defendant by a permissive consideration of all the facts and circumstances in evidence. It is proper for the jury to be instructed to give such consideration. State v. Dalrymple, Mo., 270 S.W. 675, 679; State v. Gentry, 320 Mo. 389, 8 S.W.2d 20, 28; State v. Berezuk, 331 Mo. 626, 55 S.W.2d 949, 953.

Under Sec. 195.020, RSMo 1959, V.A. M.S., where the *possession* of the narcotic drug is the gravamen of the offense charged, it was proper for the court to charge that it was not necessary for the state to prove that defendant intended to make some other use of the drug, if the jury found he had it in his possession. The instruction does not shift the burden of proof. The statement, "It is sufficient for the State to show that the drug was in his possession knowingly and intentionally," merely restates the submission as to the state's burden on intent in Instruction 2, under which if the jury did not find that defendant had knowledge of the presence of the marijuana, it could not find a verdict of guilt. See State v. Scott, Mo., 333 S.W.2d 41, 46.

There is no error here by the inclusion of the word "custody" in Instruction 4. See discussion of the words "custody," "control" and "possession" above.

Defendant has cited no case demonstrating any error in Instruction 4, and we find none.

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by PRITCHARD, C., is adopted as the opinion of the Court.

All of the Judges concur.